ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY v
PUBLIC SERVICE COMMISSION

ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket Nos. 141276, 141285, 143184, 143187. Submitted December 14,
1993, at Lansing. Decided June 16, 1995; approved for publica-
tion July 26, 1995, at 9:00 A.M.

Consumers Power Company, as required by the terms of financial
stabilization rate relief of $99 million annually for six years
commencing in 1985 granted to it by the Public Service Com-
mission for financial distress caused by debt related to the
abandoned construction of a nuclear power plant in Midland,
initiated a proceeding in the PSC for review of Consumer's
compliance in 1988 with the conditions imposed for the rate
relief. Before the review could be completed, Consumers filed a
motion for reduction of its financial stabilization surcharge to
zero and for elimination of further review of its compliance
with the rate-relief conditions. The PSC reduced the surcharge
to zero, but did not terminate compliance proceedings. The PSC
determined that Consumers had violated the rate-relief condi-
tions and that $440,800,000 of surcharges collected through
March 12, 1990, should be subtracted from relief of
$759,885,000, which is to be collected without interest during a
ten-year period commencing in 1985, granted by the PSC to
Consumers for recovery of its investment in the nuclear plant.
The PSC also assessed interest at eleven percent on surcharges
collected through May 7, 1991, to further reduce by $57,921,000
the relief granted for recovery of the investment in the nuclear
plant. The Association of Businesses Advocating Tariff Equity
and the Attorney General appealed, and their appeals were
consolidated.

The Court of Appeals *held*:

1. The decision of the PSC not to make detailed findings
regarding all the alleged violations of the conditions for the
financial stabilization rate relief was neither unreasonable nor
unlawful. The PSC recognized its obligation to review the entire
record, but reasonably concluded that there was no need to
evaluate all the appellants' claims after finding some of them

to have merit. The PSC's opinion supplied sufficient information to permit meaningful appellate review.

2. The PSC reasonably interpreted one of the conditions to allow, but not require, the immediate refund of surcharges to ratepayers upon a violation of the condition.

3. The remedy chosen by the PSC is reasonable under the circumstances of this case. The remedy makes the ratepayers whole in that it compensates them for the lost use of monies paid as surcharge during the period that Consumers was not in compliance with the conditions, penalizes Consumers for its violations, and allows Consumers to recoup that amount of its investment in the Midland nuclear plant found reasonable by the PSC.

4. The PSC did not err in limiting interest on the surcharges to those collected through May 7, 1991, inasmuch as the penalty assessed is to be subtracted from the interest-free rate relief granted for recoupment of Consumers' investment in the nuclear plant.

5. Contrary to the Attorney General's contention, the PSC did not have the authority to reopen the 1985, 1986, and 1987 compliance review cases and change its determinations regarding compliance in those years because the determinations were made on the merits. To the extent that the PSC could have reopened those cases, it did not abuse its discretion in refusing to do so.

Affirmed.

*Hill Lewis* (by *Douglas H. West, Louis J. Porter, Marsha Kay Nettles, Roderick S. Coy, Timothy P. Collins,* and *Joseph R. Assenzo*), for the Association of Businesses Advocating Tariff Equity.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Luis F. Fernandez* and *Orjiakor N. Isiogu,* Assistant Attorneys General, for the Attorney General.

*Don L. Keskey, Henry J. Boynton,* and *Tonatzin Alfaro Garcia,* Assistant Attorneys General, for the Public Service Commission.

*David A. Mikelonis* and *James E. Brunner* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting,*

*P.C.* (by *Michael G. Oliva*), for Consumers Power Company.

Before: GRIBBS, P.J., and HOLBROOK, JR., and J. D. PAYANT,* JJ

PER CURIAM. The Association of Businesses Advocating Tariff Equity (ABATE) and the Attorney General appeal as of right from the May 7, 1991, opinion and order of the Public Service Commission, contending that the PSC erred in its selection of a remedy for violation by Consumers Power Company of certain conditions imposed with financial stabilization rate relief. Both parties also appeal the PSC's July 19, 1991, opinion and order denying their petitions for rehearing.

I

On November 18, 1983, Consumers filed an application in Case No. U-7830 for authority to increase its rates for the sale of electricity. On August 1, 1984, Step 3 of the application was amended to reflect cessation of construction of the Midland nuclear generating plant. The PSC subsequently divided Step 3 into two parts: Step 3A involved Consumers' request for financial stabilization rate relief in the amount of $205 million annually in order to remedy the financial distress caused by debt related to the Midland project; Step 3B involved Consumers' request for recovery of its investment in the Midland plant project.

On March 29, 1985, the PSC denied Consumers' request for rate relief in the amount of $205 million, finding that this would place most of the burden of improving the utility's financial condition on the ratepayers. However, the PSC also

---

* Circuit judge, sitting on the Court of Appeals by assignment.

found that Consumers' debt incurred in the Midland project threatened to send the company into bankruptcy and thereby harm ratepayers. The PSC concluded that a rate increase of $99 million annually for a period of six years, conditioned upon Consumers' compliance with strict cost-cutting and debt-restructuring measures, would be of greatest benefit to the ratepaying public at the least total cost.[1] In exchange for this financial stabilization rate relief, Consumers agreed to abide by twelve conditions, as well as annually initiate compliance review cases so that the PSC could monitor compliance with the twelve conditions. The PSC found Consumers to be in compliance with the conditions for calendar years 1985, 1986, and 1987.

On March 15, 1989, Consumers initiated the 1988 compliance review proceeding. Before that proceeding concluded, on March 12, 1990, Consumers filed a motion with the PSC seeking to reduce its financial stabilization surcharge to zero, effective immediately. Consumers argued that the elimination of the rate relief should eliminate the need for further review of its compliance with the twelve financial stabilization conditions. By order dated March 13, 1990, the PSC reduced the surcharge to zero effective March 12, 1990, but did not terminate the compliance proceedings. Instead, on March 27, 1990, the PSC consolidated a number of dockets, including the compliance review proceedings for 1988, 1989, and the first quarter of 1990.

At hearings held before PSC referees, ABATE and the Attorney General attempted to demonstrate that Consumers committed a total of thirty-two violations of seven conditions. In its May 7, 1991, opinion and order, the PSC agreed that Consumers

---

[1] For various reasons, the PSC reduced the rate relief, so that by 1988 the annual surcharge was $79 million.

violated the conditions, but directly addressed only six violations of three conditions. The PSC concluded:

Accordingly, for all of these reasons, the Commission finds that Consumers has failed to comply with the letter and the spirit of the March 29, 1985 financial stabilization order. The company's actions unnecessarily prolonged the annual review of its compliance with the terms of financial stabilization for the years 1988, 1989, and the first quarter of 1990. Additionally, the company's numerous efforts to evade the conditions of financial stabilization by siphoning away assets that could have been used to assist the return to financial health. As a result of Consumers' corporate restructuring, assets that could have been available to assist Consumers in paying its massive bank debt, achieving a more reasonable capital structure, improving its bond rating, funding the operation and maintenance of its physical plant, and otherwise improving service to ratepayers were shifted away from the utility to other activities in contravention and violation of the spirit of financial stabilization.

As a remedy, the Attorney General argued that Consumers should be required to refund the entire $440,848,000 of surcharges collected through March 12, 1990. ABATE agreed, and in the alternative argued that the $214,379,000 collected in 1988, 1989, and the first quarter of 1990 should be refunded to ratepayers.

The PSC rejected both suggestions. The PSC noted that it had previously found Consumers to be in compliance with the conditions of financial stabilization in 1985, 1986, and 1987, and found no persuasive reason to reopen those decisions and reverse them. The PSC also rejected ABATE's suggested remedy. Instead, the PSC decided to fashion

a remedy that would dovetail with its decision, reached the same day, regarding the Step 3B proceeding, by which Consumers was permitted to collect $759,885,000 from its ratepayers over a ten-year period without interest. This sum represents the recoupment of that part of Consumers' investment in the Midland nuclear plant the PSC found reasonable. Because one of the conditions of financial stabilization rate relief required the offset of such relief against any Step 3B relief, the $440,800,000 of stabilization revenues collected from 1985 through March 12, 1990, was subtracted from the Step 3B relief. As a penalty for violating conditions 1, 5, and 11 in 1988, 1989, and 1990, the PSC assessed the interest on the revenues collected during that period at eleven percent. The result, $57,921,000, was used as an additional offset to further reduce the relief granted Consumers in Step 3B.

ABATE and the Attorney General filed petitions for rehearing, arguing that the PSC erred in not examining and making findings regarding all the alleged violations of the financial stabilization rate relief conditions. In its July 1, 1991, opinion and order, the PSC disagreed, holding that additional findings and discussion would serve no useful purpose because the findings made were sufficient to justify the remedy imposed and because the PSC would not change the remedy in light of additional findings.

The Attorney General and ABATE also argued that the PSC's remedy was inadequate. After considering and rejecting a number of specific objections, the PSC restated its belief that the remedy chosen was appropriate under the circumstances:

> The Commission remains convinced that the remedy that has been imposed on Consumers is

fair to both the company and its ratepayers. Step
3A rate relief was granted to improve Consumers'
cash flow. All Step 3A financial stabilization reve-
nues collected were credited against the company's
future potential recovery in Step 3B. Seen from
this perspective, the cost to ratepayers of the
financial stabilization program was not
$440,848,000, but the time value of the surcharge
revenues collected by Consumers. The Commission
remedied Consumers' violation of the conditions of
financial stabilization by adding interest to the
surcharge revenues collected during 1988, 1989,
and 1990 to compensate ratepayers for the time
value of money. ABATE's argument does not recog-
nize that the economic effect[s] of the company's
transgressions are difficult to determine. For ex-
ample, the economic effect of Consumers' violation
of condition 5 is uncertain. In testimony quoted on
page 43 of the May 7, 1991 order, Attorney Gen-
eral witness Ben Johnson was unable to quantify
the value of the $102 million MCV option, except to
say that "it was substantially in excess of zero, but
less than the $102 million that could have been
demanded." (16 TR 1952.) The Commission finds
that the remedy provided by its May 7, 1991 order
suitably corrects for Consumers' transgressions,
provided the full offset (plus interest) is upheld.
Accordingly, the Commission rejects ABATE's argu-
ments on this issue.

Further, the Commission disagrees with ABATE's
contention that a violation of condition 5 required
an immediate refund of all financial stabilization
revenues. Condition 5 provided that "if Consumers
violates this condition, all Step 3A revenues will
be subject to immediate refund." (March 29, 1985
order, Case No. U-7830 Step 3A, p 42.) While this
language subjected those revenues to the possibil-
ity of an immediate refund, it did not require that
action. A lesser remedy would also be permissible.

The Attorney General and ABATE each filed
claims of appeal from these orders.

II

ABATE contends that the PSC abused its discretion in fashioning a remedy or penalty in this case by failing to consider the entire record of Consumers' violation of the twelve conditions. ABATE argues that an appropriate remedy cannot be fashioned unless all the violations are reviewed and findings made regarding them. ABATE therefore requests this Court to remand to the PSC for further findings regarding all the additional alleged violations.

Similarly, the Attorney General contends that the case must be remanded or the PSC's decision reversed because the PSC failed to consider the whole record in fashioning a remedy.

This Court reviews decisions of the PSC to determine whether they are reasonable and lawful. The challenger has the burden of proving by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable. This Court must give due deference to the PSC's administrative expertise and should not substitute its judgment for that of the PSC. To the extent that the PSC's decision is based on findings of fact, the challenger must show that they are not supported by competent, material, and substantial evidence on the whole record. *Attorney General v Public Service Comm,* 189 Mich App 138, 142; 472 NW2d 53 (1991).

Because there are no factual disputes at issue in this appeal, the substantial evidence test is not relevant. Appellants challenge the appropriateness, reasonableness, or lawfulness of the remedy ordered by the PSC in light of its findings or in light of its failure to make findings regarding all the alleged violations of the twelve conditions.

The PSC's decision not to make detailed findings regarding all the alleged violations was neither

unreasonable nor unlawful. The PSC recognized its obligation to review the entire record, but reasonably concluded that there was no need to evaluate all of appellants' claims after finding some of them to have merit. The PSC's opinion supplies sufficient information to permit meaningful appellate review. *Viculin v Dep't of Civil Service*, 386 Mich 375, 405; 192 NW2d 449 (1971). Appellants have not demonstrated that the PSC is under any obligation to do more.

III

Condition 5 prohibited Consumers from resuming construction or expending any funds to resume construction of the Midland plant.[2] Condition 5 provides that if Consumers violates the condition, "all Step 3A revenues will be subject to immediate refund." Both ABATE and the Attorney General argue that the PSC should have ordered an immediate refund of all financial stabilization surcharges once it found that Consumers violated condition 5.

This argument is clearly without merit. Although condition 5 threatens the immediate refund of all surcharges, it does not require it. The PSC reasonably interpreted condition 5 as allowing the imposition of a remedy or penalty tailored to the nature and extent of the transgression. *CMS Energy Corp v Attorney General*, 190 Mich App 220, 235; 475 NW2d 451 (1991).

ABATE also contends that the reasons given by the PSC for selecting its remedy are inadequate, and that its choice of remedy is unreasonable, arbitrary, capricious, or an abuse of discretion. ABATE argues that the remedy is inadequate to make ratepayers whole for the surcharges paid

[2] Later modification of this condition by the PSC to permit Consumers to expend limited funds is not relevant to these appeals.

during the 2¼ years that Consumers was not living up to the conditions imposed in exchange for the surcharges.

We disagree. The PSC has adequately explained the reasons for the remedy chosen, and we find the remedy reasonable under the circumstances of this case. The PSC's remedy makes the ratepayers whole in the sense that it compensates them for the lost use of the monies paid as surcharge during the period when Consumers was not in compliance with the conditions. By imputing interest on this amount and subtracting it from the future rate increase granted in the Step 3B proceeding, the PSC has compensated ratepayers for the lost use of their money and penalized Consumers for violating the conditions, while at the same time allowing Consumers to recoup that portion of its investment in the Midland plant that the PSC has found reasonable.[3]

In the absence of any statutory limitation, the choice of a penalty or sanction for violating an order of an administrative agency is consigned to the agency's discretion. *Marrs v Bd of Medicine,* 422 Mich 688, 695; 375 NW2d 321 (1985). No abuse of discretion has been shown here.

ABATE argues in the alternative that even if the remedy chosen was correct in the abstract, the PSC erred in imputing interest on the surcharges collected only through the date of the PSC's May 7, 1991, order. Because the penalty is subtracted from the Step 3B rate relief that will be collected over a ten-year period, ABATE contends that the PSC has essentially allowed Consumers to pay this penalty on a ten-year installment plan with zero interest.

In the Step 3B proceeding, the PSC has allowed

---

[3] The Court recently upheld the PSC's Step 3B decisions. *ABATE v Public Service Comm,* 208 Mich App 248; 527 NW2d 533 (1994).

Consumers to collect a portion of its investment in the Midland plant from its ratepayers over a ten-year period but without interest. It was therefore consistent to subtract the penalty from the Step 3B relief without imputing interest. Although the discounted value of the penalty imposed is thereby lessened, so too is the discounted value of the rate relief afforded in the Step 3B proceeding. We find nothing unreasonable in subtracting each year one-tenth of the penalty calculated in 1991 from one-tenth of the Step 3B relief calculated in 1991.

IV

The Attorney General claims that evidence came to light in the instant case demonstrating that Consumers was not in compliance with all the conditions in 1987, and probably was not in compliance in 1985 and 1986. The Attorney General argues that the PSC erred in refusing to reopen those cases and reverse its findings that Consumers was in compliance during those years. The Attorney General argues that the PSC should order Consumers to refund all the surcharges collected during those years.

It is generally held that when an agency has made a determination on the merits, it may not reopen the case for redetermination of the merits. However, the "no rehearing" rule does not apply to orders based on procedural matters not affecting the merits, and does not prevent agencies from correcting mistakes in their orders. *Wemmer v Nat'l Broach & Machine Co*, 199 Mich App 376, 383; 503 NW2d 77 (1993). Because the PSC made findings on the merits regarding Consumers' compliance with the conditions, it did not have authority to reopen the 1985, 1986, and 1987 compliance cases and change its determinations. Moreover, to

the extent that the PSC could have reopened those cases, we hold that it did not abuse its discretion in refusing to do so. The cases have long been closed and no party appealed from the PSC's decisions.

Affirmed.