ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY v PUB-
LIC SERVICE COMMISSION

MIDLAND COGENERATION VENTURE LIMITED PARTNERSHIP v PUB-
LIC SERVICE COMMISSION

CONSUMERS POWER COMPANY v PUBLIC SERVICE COMMISSION

Docket Nos. 184200, 184217, 186622. Submitted September 3, 1996, at
Detroit. Decided November 1, 1996, at 9:25 A.M. Leave to appeal
sought.

On March 30, 1994, Consumers Power Company filed an application
with the Public Service Commission for reconciliation of its power
supply costs and revenues for 1993. Among the costs considered by
the PSC were the costs associated with power purchased by Con-
sumers from the Midland Cogeneration Venture Limited Partner-
ship (MCV). The PSC had entered on March 31, 1993, a final order
based on a settlement proposal in the protracted proceedings
under the federal Public Utility Regulatory Policies Act of 1978
(PURPA), PL 95-617, 92 Stat 3117, relating to the qualification of the
MCV as a cogeneration facility and to Consumers' purchases of elec-
tricity from the MCV. Under that order, Consumers was permitted to
purchase up to 915 megawatts (MW) of the MCV's capacity and would
be able to recover 3.62 cents a kilowatt hour (cents/kWh) for such
power delivered to it by the MCV up to an availability limit that
varied from year to year and the variable energy cost plus a capac-
ity cost of five mills a kilowatt hour (mills/kWh) for MCV power
delivered to it on an economic basis above the availability limit. In
its order in this 1993 power supply cost recovery proceeding, the
PSC held that because the availability limit for 1993 was eighty per-
cent, Consumers would be able to recover 3.62 cents/kWh for the
first 732 MW of power delivered to it by the MCV and its variable
energy cost plus five mills/kWh for delivered power between 732
MW and 915 MW. The PSC further held that Consumers would be able
to recover the capacity charges for all power delivered by the MCV
in 1993, including that delivered before the March 31, 1993, final
order in the PURPA proceeding, but that the MCV costs would be sub-
ject to the same allocation of capacity costs between sales to cus-
tomers subject to PSC jurisdiction and sales to customers not sub-
ject to PSC jurisdiction that was applied to all other capacity costs.

The Association of Businesses Advocating Tariff Equity (ABATE), which had filed objections to the application for reconciliation of Consumers' 1993 power supply costs, the MCV, and Consumers each appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. ABATE's challenge to the PSC's allowing Consumers to recover capacity charges related to purchases of power from the MCV for the first three months of 1993 even though the final order in the PURPA proceedings was not entered until March 31, 1993, is not properly raised in this appeal. The PSC's final order in the PURPA proceedings specifically provided that the approval of Consumers' MCV costs was effective as of January 1, 1993. Having failed to challenge the March 31, 1993, order by a direct appeal of that order, ABATE cannot attack collaterally the holding in that order in this appeal of a subsequent order that merely enforces the holding of the prior unchallenged order.

2. The MCV argued that Consumers should be able to recover the fixed energy costs of power delivered by the MCV above the 732 MW availability limit rather than only a variable portion of the energy charge plus the five mills/kWh capacity charge. The proper recovery for power delivered by the MCV above the 732 MW availability limit is essentially one of interpretation and clarification of the PSC's March 31, 1993, final order in the PURPA proceedings. The Court of Appeals accords great deference to the PSC's interpretation of its own orders and ordinarily will uphold the PSC's interpretation of its own orders as long as the interpretation is reasonable or supported by the record. The MCV has failed to meet its burden of establishing by clear and satisfactory proof that the PSC's interpretation of the prior order is unreasonable or unlawful.

3. Consumers' challenge that the reconciliation of the MCV costs should not be subject to the reduction associated with the allocation of capacity costs between sales to customers subject to PSC jurisdiction and sales to customers not subject to PSC jurisdiction also turns on the propriety of the PSC's interpretation of its March 31, 1993, final order in the PURPA proceedings. Consumers has failed to carry its burden of establishing by clear and satisfactory evidence that the PSC's interpretation of the prior order is unreasonable, unlawful, or unsupported by the record.

Affirmed.

*Hill Lewis* (by *Roderick S. Coy* and *Stephen J. Videto*), for Association of Businesses Advocating Tariff Equity.

*Foster, Swift, Collins & Smith, P.C.* (by *Stephen O. Schultz* and *Mark J. Burzych*), for Midland Cogeneration Venture Limited Partnership.

*David A. Mikelonis, Jon R. Robinson, Frank R. Knox,* and *Kelly M. Hall,* for Consumers Power Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *J. Peter Lark,* Assistant in Charge, and *Robert L. Mol,* Assistant Attorney General, for the Attorney General.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey,* Assistant Attorney General, for the Public Service Commission.

Before: MARKMAN, P.J., and McDONALD and M. J. Matuzak,* JJ.

PER CURIAM. In these consolidated appeals, the Association of Businesses Advocating Tariff Equity (ABATE), the Midland Cogeneration Venture Limited Partnership (MCV), and Consumers Power Company appeal as of right orders of the Michigan Public Service Commission in the reconciliation phase of Consumers' annual electric power supply cost recovery (PSCR) case for 1993. We affirm.

All the appeals in this case concern various aspects of the PSC's treatment of Consumers' purchased-power transactions with the MCV. The MCV is a limited partnership formed for the purpose of constructing and operating a gas-fired cogeneration power plant at the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

site of Consumers' abandoned nuclear power plant in Midland, Michigan. The MCV's plant is a qualifying cogeneration facility (QF) for purposes of the federal Public Utility Regulatory Policies Act of 1978 (PURPA), PL 95-617, 92 Stat 3117.

In 1987, Consumers executed a thirty-five-year power purchase agreement with the MCV, providing for Consumers to purchase from the MCV, on the basis of availability, up to 1,240 megawatts (MW) of electric generating capacity and energy, at an average capacity rate of 4.15 cents a kilowatt hour (cents/kWh). Before the MCV's plant went into commercial operation in 1990, the PSC, in Case No. U-8871 (hereafter the PURPA proceedings), approved a quantity and cost structure for Consumers' purchases of QF power in general, but it did not approve Consumers' power purchase agreement with the MCV in particular, because the terms of that agreement exceeded the quantity and cost limits set by the PSC. The PSC's initial decisions in the PURPA proceedings were affirmed in part and reversed and remanded in part in *Consumers Power Co v Public Service Comm*, 189 Mich App 151; 472 NW2d 77 (1991). It was not until March 31, 1993, nearly four months into Consumers' 1993 PSCR plan year, that the PSC rendered its final decision on remand in the PURPA proceedings, adopting a modified version of a settlement proposal approving Consumers' purchase of power from the MCV within certain quantity and cost limits, but again without approving the actual terms of Consumers' 1987 power purchase agreement with the MCV. The PSC's decision was affirmed on appeal in *ABATE v Public Service Comm*, 216 Mich App 8; 548 NW2d 649 (1996).

Among other things, the settlement proposal submitted in the PURPA proceedings on remand would have provided for PSC approval of Consumers' purchases of up to 1,205 MW of QF capacity, 915 MW of which would be supplied by the MCV, with Consumers' recovery of MCV capacity costs being set at or less than 3.77 cents/kWh, subject to certain limits based upon availability. The availability limits or "caps" of the settlement proposal would limit Consumers' recovery of capacity and fixed energy costs for MCV power to a certain percentage of the 915 MW figure, depending upon the year. For example, in 1993, Consumers would recover only those costs for up to eighty percent of 915 MW (732 MW) of MCV power during off-peak periods. For any MCV power actually delivered to Consumers on an economic basis over and above the applicable availability caps, Consumers would recover only the variable portion of the energy charge plus five mills a kWh (mills/kWh).

The modified version of the settlement proposal approved by the PSC gave Consumers two options for recovering its costs for MCV power, one based upon availability and the other based upon power actually delivered. Under the availability-based option, Consumers would be allowed to recover 3.62 cents/kWh for available capacity up to an availability limit set at eighty percent of 915 MW. For actual deliveries of power above the eighty percent limit, i.e., between 732 MW and 915 MW, Consumers would recover the five mills/kWh "capacity" charge provided for in the settlement proposal. Under the delivery-based option, MCV power could be dispatched by Consumers whenever it is available, up to the availability limits specified in the settlement proposal as applied to the 915

MW of capacity. Again, Consumers would recover 3.62 cents/kWh for capacity costs and would receive the five mills/kWh "capacity" charge set forth in the settlement proposal whenever MCV power was dispatched on an economic basis above the availability limits established in the settlement proposal.

In April of 1993, Consumers filed an acceptance of the PSC's March 31, 1993, order on remand in the PURPA proceedings, choosing the delivery-based option for recovery of its MCV costs. By that time, Consumers had already been implementing the PSCR factor proposed in its PSCR plan for 1993, but after the PSC approved the modified settlement proposal on remand in the PURPA proceedings, Consumers reduced its monthly PSCR factor collections for the remainder of the year. The PSC did not issue its decision approving Consumers' PSCR plan for 1993 until March 30, 1994, the same date that the instant 1993 PSCR reconciliation proceedings commenced. Following evidentiary hearings, the issuance of a proposal for decision by the hearing officer, and the filing of exceptions thereto, the PSC issued its reconciliation order permitting Consumers to prospectively surcharge $16,051,897 for underrecovery of PSCR costs during 1993. The PSC subsequently denied Consumers' motion for rehearing.

This Court's review of decisions of the PSC is narrow in scope. All rates, fares, charges, classifications, and joint rates fixed by the PSC and all regulations, practices, and services prescribed by the PSC, are deemed, prima facie, lawful and reasonable. MCL 462.25; MSA 22.44. A party challenging an order of the

PSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8). An order of the PSC is "unlawful" when it involves an erroneous interpretation or application of the law and "unreasonable" when it is unsupported by the evidence. To the extent that the PSC's decision is based on findings of fact, the challenger must show that those findings are not supported by competent, material, and substantial evidence on the whole record. This Court gives due deference to the PSC's administrative expertise and will not substitute its judgment for that of the PSC. *Attorney General v Public Service Comm*, 215 Mich App 356, 364; 546 NW2d 266 (1996).

ABATE argues that the PSC unlawfully allowed Consumers to recover MCV capacity charges for the first three months of Consumers' 1993 PSCR year to the extent those charges involved capacity costs that were not approved by the PSC until its March 31, 1993, order on remand in the PURPA proceedings. Because the PSC did not approve those capacity costs until March 31, 1993, ABATE contends that any such costs associated with MCV capacity purchased and charged to Consumers' ratepayers between January 1 and March 31, 1993, should have been disallowed for lack of the "prior approval" required by the following language in MCL 460.6j(13)(b); MSA 22.13(6j)(13)(b):

> In its order in a power supply reconciliation, the commission shall:
>
>     \*    \*    \*
>
> (b) Disallow any capacity charges associated with power purchased for periods in excess of 6 months unless the utility has obtained the prior approval of the commission.

ABATE's argument is actually a belated challenge of the PSC's previous decision on remand in the PURPA proceedings. Although it is true that the PSC did not issue its decision in that case until March 31, 1993, the PSC specifically and unequivocally ruled at that time that its approval of Consumers' MCV costs was effective as of January 1, 1993, for the express purpose of allowing Consumers to recover those costs in its 1993 PSCR case for *all* of 1993. In this regard, the PSC also specifically rejected ABATE's argument that the PSC's approval should be given prospective effect only. This Court lacks jurisdiction to review the PSC's previous decision of March 31, 1993, at this late date. MCL 462.26(1); MSA 22.45(1); *Attorney General v Public Service Comm*, 172 Mich App 778; 432 NW2d 437 (1988). Having failed to challenge this aspect of the PSC's decision of March 31, 1993, on direct appeal, ABATE cannot now collaterally attack the PSC's ruling in the context of an appeal from a subsequent order that merely enforces the PSC's previous decision concerning the issue of retroactivity. See *CMS Energy Corp v Attorney General*, 190 Mich App 220, 227-228; 475 NW2d 451 (1991).

The MCV argues that the PSC should have allowed Consumers to recover the fixed energy costs of MCV power actually delivered above the 732 MW off-peak availability limit established in the settlement proposal in the PURPA proceedings on remand, instead of only allowing Consumers to recover the variable portion of the energy charge plus the five mills/kWh "capacity" charge as provided in the settlement proposal. According to the MCV, the provisions of the original settlement proposal in the PURPA proceedings that placed limits on Consumers' recovery of capacity

and fixed energy charges for power in excess of the availability caps were inextricably tied to the proposal that Consumers be allowed to recover its MCV charges on an availability basis, but those provisions were supplanted by the PSC's creation of the delivery-based recovery option that allows Consumers to recover "the corresponding energy payments" for MCV power economically dispatched up to the 915 MW limit. As a result, the MCV contends, the PSC has failed to allow compensation for the full amount of Consumers' avoided costs, contrary to the requirements of the PURPA.

The issue presented is essentially one of interpretation and clarification of the PSC's March 31, 1993, decision in the PURPA proceedings on remand. There is no disagreement that the original settlement proposal, before modification by the PSC, established certain availability caps limiting Consumers' recovery of both capacity and fixed energy charges and limited Consumers' recovery for power delivered in excess of those caps to the variable portion of the energy charge plus five mills/kWh only. The dispute is whether the PSC modified the operation of those availability caps when it incorporated them into its own delivery-based recovery option, such that the availability caps limit only Consumers' recovery of capacity charges, not the fixed portion of energy charges for economically dispatched MCV power.

Just as this Court accords great deference to the PSC's administrative expertise when the PSC construes the statutes or rules it is charged with enforcing, this Court also accords substantial deference to the PSC's interpretation of its own orders. See *Michigan Gas Utilities v Public Service Comm*, 200 Mich App 576,

582; 505 NW2d 27 (1993). Accordingly, this Court ordinarily will uphold the PSC's interpretation of its own orders as long as the interpretation is reasonable or supported by the record. See *ABATE v Public Service Comm*, 212 Mich App 371, 379; 538 NW2d 30 (1995), and *CMS Energy Corp, supra* at 235.

We are not persuaded that the PSC's interpretation of its own delivery-based recovery option as incorporating the limits upon recovery of fixed energy charges set forth in the original settlement proposal is unreasonable or unsupported by the record. In its March 31, 1993, decision in the PURPA proceedings, the PSC described this option as allowing Consumers to dispatch MCV power whenever it is available "up to the availability limits specified in the settlement." There is little, if anything, in the express language of the PSC's decision indicating any modification of those limits as "specified in the settlement." In fact, when summarizing the two recovery options set forth in its March 31, 1993, decision, the PSC's only description of Consumers' recovery in the event of deliveries over and above the availability limits set for each option was that Consumers "would recover 5 mills per kWh for energy delivered from the 915 MW that is above the limits provided in these options."

The only express language of the March 31, 1993, decision of the PSC that the MCV identifies as support for its interpretation is a single statement in the PSC's initial description of the delivery-based option indicating that "Consumers may recover the corresponding energy payments, based on coal proxy prices, for the required dispatch without a disallowance in the annual PSCR cases." The phrase "corresponding energy payments" is at best only equivocal regarding the

question whether the PSC intended to allow Consumers to recover the fixed portion of its energy costs without regard to the availability limits of the settlement. Accordingly, the MCV has failed to meet its burden of establishing by clear and satisfactory proof that the PSC's interpretation is unreasonable or unlawful.

Because the MCV has failed to establish that the PSC incorrectly interpreted the intended operation of the delivery-based recovery option established in its decision on remand in the PURPA proceedings, the MCV's argument that the PSC's decision violates or is preempted by the PURPA must also fail. The PSC's adoption of the availability and delivery-based recovery options in its March 31, 1993, decision was part and parcel of the PSC's final resolution of the issue of avoided costs for purposes of the PURPA. We also reject the MCV's objection that it received disparate treatment by the PSC relative to the PSC's treatment of the costs associated with other QFs, because the PSC's development of the special options for recovering MCV costs was closely tied to the unique features and problems presented by Consumers' purchase of power from the MCV, e.g., the fact that Consumers' payments to the MCV were on an availability basis, the fact that the MCV is a close corporate affiliate of Consumers, and the availability/capacity discrepancies between the coal-fired proxy used by the PSC and the MCV's gas-fired plant.

Consumers challenges the PSC's "jurisdictionalization" of 24.43 MW of the 915 MW of MCV capacity approved by the PSC in the PURPA proceedings as a result of the application of the PSC's usual formula for allocating Consumers' PSCR costs between Consumers'

jurisdictional and nonjurisdictional electricity sales for the year, thereby reducing Consumers' PSCR recovery of those costs to 890.57 MW. According to Consumers, the PSC's March 31, 1993, decision in the PURPA proceedings established 915 MW of the MCV's capacity as the point separating the MCV capacity dedicated to Consumers' PSCR customers and thus within the PSC's ratemaking jurisdiction from the MCV capacity that was available for Consumers' sales to other customers over which the PSC has no ratemaking jurisdiction. Therefore, Consumers argues, the PSC's allocation of the 915 MW of approved MCV capacity into jurisdictional and nonjurisdictional components for purposes of this 1993 PSCR case constituted an arbitrary, capricious, and unreasonable change in methodology, contrary to Consumers' reasonable expectations based upon the PSC's March 31, 1993, decision in the PURPA proceedings and contrary to Consumers' constitutional due process rights.

Again, the issue presented is essentially a question whether the PSC has interpreted its own previous decision of March 31, 1993, on remand in the PURPA proceedings properly. Specifically, the issue is whether the PSC properly determined that its March 31, 1993, decision in the PURPA proceedings was not intended to change the PSC's usual practice of jurisdictionalizing Consumers' PSCR expenses with regard to the 915 MW of MCV capacity costs it approved for recovery in Consumers' annual PSCR cases. Again, the burden is upon the challenging party to establish, by clear and satisfactory evidence, that the PSC's interpretation of its previous decision is unreasonable or unsupported by the record. Consumers has not met that burden here.

Consumers is undoubtedly correct in noting that the PSC's well-established practice of "jurisdictionalizing" Consumers' PSCR costs did not necessarily preclude the PSC from creating an exception to that practice in the case of the MCV capacity costs approved in the PURPA proceedings. However, if the PSC did intend to make that kind of momentous change in its previous practice, one might reasonably expect the PSC to indicate clearly and expressly its intention to do so. Yet, nowhere in the PSC's ninety-two-page opinion and order of March 31, 1993, does the PSC ever expressly state that the 915 MW of approved MCV capacity costs would be exempt from the usual "jurisdictionalization" formula used in Consumers' PSCR cases.

Consumers relies upon various statements in the PSC's March 31, 1993, decision that are at best only equivocal with respect to the question of "jurisdictionalization" of the 915 MW of approved MCV capacity costs. For example, Consumers cites the fact that the PSC stated in its March 31, 1993, decision that the capacity charges for 915 MW of MCV power were "approved for purposes of Act 304, but not Act 81." However, that statement can reasonably be interpreted as merely continuing the practice developed in Consumers' previous PSCR cases, where Consumers was allowed to recover MCV capacity costs within the parameters originally approved by the PSC in the PURPA proceedings before remand, despite the lack of "Act 81" approval of Consumers' power purchase agreement with the MCV, yet Consumers' MCV capacity costs were still "jurisdictionalized" along with all of Consumers' other PSCR costs for the PSCR year. Consumers also makes much of the fact that the PSC's March 31, 1993, order approves that portion of the settlement

proposal that expressly provides for Consumers' third-party sales above the 915 MW approved capacity cost limit to be treated as nonjurisdictional sales for ratemaking purposes. However, it does not necessarily follow that all capacity costs incurred by Consumers up to the 915 MW limit would be likewise attributed solely to Consumers' jurisdictional sales.

Consumers has not met its burden of establishing that the PSC's interpretation of its own previous decision is unlawful, unreasonable, or unsupported by the record. At most, Consumers has shown only that another, plausible interpretation of the PSC's decision is possible. Given the statutory presumptive lawfulness and reasonableness of the PSC's decisions on appeal, and this Court's corresponding deference to the PSC's judgment and expertise, particularly when interpreting its own decisions, we conclude that Consumers has failed to provide a sufficient basis for reversing the PSC's decision in this regard.

Affirmed. No costs.