*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CENTERPOINT OWNER LLC,

      Petitioner-Appellant,

v

CITY OF GRAND RAPIDS,

      Respondent-Appellee.

UNPUBLISHED
January 22, 2019

No. 340710
Tax Tribunal
LC No. 17-001939-TT

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

Petitioner, Centerpoint Owner LLC (Centerpoint), appeals as of right the Tax Tribunal's order dismissing its petition as untimely filed that its agent, Ryan LLC (Ryan), e-filed on June 1, 2017, the day after the May 31, 2017 statutory deadline for filing property tax appeals. The Tax Tribunal dismissed 80 other property tax petitions e-filed by Ryan as similarly untimely filed. On behalf of Centerpoint and the other 80 property tax petitioners, Ryan filed separate identical motions for reconsideration of the Tax Tribunal's dismissals. Ryan asserted that the Tax Tribunal's e-filing system suffered a "system-wide outage" on May 31, 2017, because the electronic payment system, CEPAS, that the state required the Tax Tribunal to use, had a duplicate payment protection feature that did not allow the repeated use of the same credit card without a five-minute delay between transactions. The Tax Tribunal designated Centerpoint's case as the lead case, permitted respondent to respond to Centerpoint's motion, and held an evidentiary hearing after which the Tax Tribunal denied Centerpoint's motion for reconsideration. Centerpoint now appeals. We affirm.

Ryan provides tax recovery services to its business clients. On May 31, 2017, Michigan's commercial property tax appeal statutory filing deadline, Ryan hoped to e-file 189 property tax appeal petitions for its clients. Ryan uploaded a client's petition around 12:30 p.m. and attempted paying the filing fee with an American Express card. CEPAS rejected the payment because it only accepted Visa, Mastercard, or Discover cards. Over the next four hours, Ryan's director within its property tax group, Michelle Lowrie, scrambled to find another credit card with sufficient credit balance so that Ryan could start the petition e-filing process. Ryan had corporate checks left over from the 2016 tax year and used those to file 33 of its clients'

petitions by mail. Lowrie obtained credit card information from Ryan's owner and CEO and started e-filing petitions at 4:32 p.m., shortly before the Tax Tribunal closed at 5:00 p.m.

Because Lowrie used a single credit card and attempted to make payments within the CEPAS five-minute duplicate payment protection period, CEPAS rejected the payments and Lowrie received duplicate payment error messages. The error message did not explain that the rejection of the payments occurred because of the use of a single credit card within five minutes from the last transaction. The error message screen stated "Payment rejected due to possible duplicate payment, please verify payment was not already submitted", "We're Sorry, Payment Incomplete", and "Possible Duplicate Payment."

Ryan's personnel received 31 payment rejections between 4:30 p.m. and 11:59 p.m. on May 31, 2017. Ryan's personnel timely e-filed 80 petitions. There were 81 petitions, however, including Centerpoint's, that were e-filed after the 11:59 p.m. deadline. The Tax Tribunal dismissed those petitions as untimely.

Centerpoint first argues that the Tax Tribunal erred by not ruling that Centerpoint's due process rights were violated by the e-filing system's credit card payment feature because Ryan, a multiple petition filer, had no notice of the feature and the error message failed to provide notice of the reason for payment rejections depriving Ryan of the ability to timely file Centerpoint's petition. We disagree.

We review de novo constitutional issues. *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999). Both the United States Constitution and the Michigan Constitution "preclude the government from depriving a person of life, liberty, or property without due process of law." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 605; 683 NW2d 759 (2004), citing US Const, Am XIV; Const 1963, art 1, § 17. Due process is a flexible concept that calls for such procedural safeguards as the situation demands. *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993); *Mathews v Eldridge*, 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976). Due process generally requires nothing more than notice of the nature of the proceedings and an opportunity to be heard in a meaningful manner. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). In *In re TK*, 306 Mich App 698, 706-707; 859 NW2d 208 (2014) (quotation marks and citations omitted), this Court explained:

> Generally, three factors should be considered to determine what is required by procedural due process:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Quotation marks and citations omitted.]

In *Bonner v City of Brighton*, 495 Mich 209, 238-239; 848 NW2d 380 (2014) (quotation marks and citations omitted), the Michigan Supreme Court explained:

The essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it. All that is necessary, then, is that the procedures at issue be tailored to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case, which must generally occur before they are permanently deprived of the significant interest at stake.

When notice is due "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Jones v Flowers*, 547 US 220, 229; 126 S Ct 1708; 164 L Ed 2d 415 (2006) (quotation marks and citation omitted). The notice required depends on the circumstances. *Id*. at 227. The Michigan Supreme Court has held that "[t]he government's knowledge that its attempt at notice has failed is a circumstance and condition that varies the notice required." *Sidun v Wayne Co Treasurer*, 481 Mich 503, 511; 751 NW2d 453 (2008) (quotation marks and citations omitted).

Centerpoint neither contends that it lacked notice of respondent's tax assessment nor notice of the tax appeal petition filing deadline. Centerpoint does not argue that it lacked time to file its tax appeal nor that it lacked opportunity to file its petition to have its appeal heard. Examination of the record in this case indicates that Centerpoint could have timely appealed respondent's property tax assessment by filing its own petition. Centerpoint also could have timely appealed the tax assessment if Ryan had chosen to file Centerpoint's petition by mail or a designated delivery system, or had chosen to file Centerpoint's petition along with those that actually were timely e-filed on May 31, 2017, before the filing deadline. Had any one of these options been chosen, Centerpoint's petition would have been accepted and not dismissed by the Tax Tribunal.

The record reflects that Centerpoint's choice to have Ryan file its petition resulted in its loss of opportunity to appeal respondent's property tax assessment because Ryan chose to select other petitions to file via mail and it put Centerpoint's petition late in its order of petitions to be e-filed. Those choices resulted in Ryan's untimely filing of Centerpoint's petition. We cannot agree that the Tax Tribunal deprived Centerpoint of due process. "Due process is satisfied when a taxpayer has a fair opportunity to challenge the accuracy and legal validity of their tax obligation and a clear and certain remedy for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 29; 703 NW2d 822 (2005) (quotation marks and citation omitted). In *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995), this Court explained that constitutional sufficiency requires

notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence. [Citation omitted.]

In this case, Centerpoint indisputably had notice and opportunity to be heard just like any other taxpayer. We conclude that Ryan's choices and conduct resulted in Centerpoint's petition's untimely filing. The Tax Tribunal, therefore, cannot be held to have deprived Centerpoint of due process of law. We conclude that the Tax Tribunal did not misapply the law

or adopt a wrong legal principle by ruling that Centerpoint's due process rights were not violated.

Centerpoint's argument fails to acknowledge Ryan's mistake, negligence, or inadvertent late filing. Under Michigan agency law, however, the conduct of an agent is attributed to the principal, and the principal cannot evade liability for its agent's mistake, negligence, or inadvertence. *White v Sadler*, 350 Mich 511, 523-524; 87 NW2d 192 (1957). We cannot agree that Centerpoint's procedural due process rights were violated because of Ryan's inability to e-file all of the petitions Ryan desired to file by the May 31, 2017 deadline.

Although Centerpoint's property interests were affected, we do not conclude that they were affected by official action of the Tax Tribunal. The evidence in this case established that Centerpoint's property interests were affected by Ryan's conduct. The procedures available to Centerpoint to appeal respondent's tax assessment did not run a risk of an erroneous deprivation of Centerpoint's rights because the Tax Tribunal gave petitioners multiple options from which they could choose to timely file their petitions. Centerpoint or its agent could have hand delivered Centerpoint's petition, mailed it, used a designated delivery service, or e-filed it before the filing deadline. These options provided Centerpoint procedural safeguards. The record reflects that Ryan's personnel failed to fully investigate how the e-filing system worked before the filing deadline. It erroneously assumed that it could rapidly e-file a multitude of petitions without testing the system or inquiring of the Tax Tribunal whether it could do so. The record also indicates that, on the deadline filing date, Ryan first ran into a delay because it failed to adequately investigate the credit card types CEPAS accepted. Because it could not use its American Express card, Ryan chose to mail some of its clients' petitions. Ryan, however, chose not to use that method for Centerpoint's petition. Next, Ryan ran into the CEPAS system's five-minute same credit card use delay. Although that delayed filing, the record reflects that Ryan ably filed numerous other clients' petitions by the deadline. Ryan determined the order of e-filing and Centerpoint suffered an untimely filing because of Ryan's choice to place Centerpoint's petition later in its order for e-filing. Analysis of the entire record establishes that the first two factors articulated in *In re TK* weigh against finding any procedural due process deficiency. See *In re TK*, 306 Mich App at 706-707.

Respecting the final factor articulated in *In re TK*, the record establishes that the Tax Tribunal had limited awareness of the problem that occurred in this case. See *id*. The CEPAS payment system's five-minute delay was experienced by filers possibly twice over the last four years before Ryan experienced the issue. The record reflects that issue occurred very rarely and lacked the frequency of other glitches in the system that witnesses testified caused the Tax Tribunal to provide the public and practitioners notice. The record indicates that the Tax Tribunal faced e-filing system glitches and took action depending on its knowledge, the frequency, and severity of the issue. The record reflects that the Tax Tribunal did not receive complaints about the single credit card use delay experienced by Ryan sufficient to warrant giving notice. Under the circumstances of this case, and particularly the history of the Tax Tribunal's e-filing system, we cannot reasonably conclude that the Tax Tribunal had an obligation to notify the public or practitioners of the issue. Centerpoint has not established that the Tax Tribunal's policy and practice regarding posting notices regarding e-filing issues

suffered from any infirmities that prevented Centerpoint from having notice and opportunity to have its appeal heard.

The record does not indicate whether the Tax Tribunal faced a fiscal or administrative burden to give notice regarding the payment system's credit card blocking feature. The record, however, established that the Tax Tribunal lacked the ability to change the payment system feature because the Department of Treasury controlled the payment system. We do not conclude that the final factor articulated in *In re TK*, weighs in favor of finding a procedural due process deficiency in this case. See *id*. Consideration of all of the factors articulated in *In re TK* leads us to conclude that the Tax Tribunal did not deprive Centerpoint of procedural due process. Therefore, we hold that the Tax Tribunal did not misapply the law or adopt a wrong legal principle; it did not err by concluding that no procedural due process violation occurred.

Centerpoint next argues that the Tax Tribunal erred by refusing to extend the petition filing deadline to accept Centerpoint's petition because MCL 205.735a must be interpreted to provide only a procedural filing deadline that does not define the Tax Tribunal's subject-matter jurisdiction. We disagree.

Generally, we limit appellate review of Tax Tribunal decisions. *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 665; 649 NW2d 760 (2002). "Absent a claim of fraud, this Court reviews decisions from the Tax Tribunal for the misapplication of law or adoption of a wrong legal principle." *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 70; 894 NW2d 535 (2017), citing *Wexford Med Group v City of Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). This Court deems the Tax Tribunal's "factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record." *Id*. (quotation marks and citations omitted). We review de novo appeals from Tax Tribunal decisions that involved statutory interpretation. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). We review de novo questions regarding subject-matter jurisdiction. *In re Wayne Co Treasurer*, 265 Mich App 285, 290; 698 NW2d 879 (2005). We review for an abuse of discretion a trial court's denial of a motion for reconsideration. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000).

Centerpoint's claim of error involves an issue of statutory interpretation. Proper statutory interpretation requires giving effect to the intent of the Legislature. *Briggs*, 485 Mich at 76. If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003).

By statute, the provisions of the Tax Tribunal Act "are effective notwithstanding the provisions of any statute, charter, or law to the contrary." MCL 205.707. The Tax Tribunal "is a quasi-judicial agency." MCL 205.721. Under MCL 205.732, the Tax Tribunal has broad powers to carry out its duties under the Tax Tribunal Act, MCL 205.701 *et seq*. including authority to promulgate rules to implement the act. This Court generally defers to the "Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing." *Moshier v Whitewater Twp*, 277 Mich App 403, 409; 745 NW2d 523 (2007). This Court, however, will not defer to a "strained construction adverse to the Legislature's intent." *Id*. Clear and unambiguous language in a statute establishes the intent of the Legislature, which this Court

then effectuates as written. *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). "Terms used in a statute must be given their plain and ordinary meaning, and it is appropriate to consult a dictionary for definitions." *EldenBrady v City of Albion*, 294 Mich App 251, 254-255; 816 NW2d 449 (2011). "Judicial construction of a statute is only permitted when statutory language is ambiguous," and ambiguity exists "only if it creates an irreconcilable conflict with another provision or it is equally susceptible to more than one meaning." *Noll v Ritzer (On Remand)*, 317 Mich App 506, 511; 895 NW2d 192 (2016).

MCL 205.731 defines the Tax Tribunal's jurisdiction in relevant part as follows:

The tribunal has exclusive and original jurisdiction over all of the following:

(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state.

(b) A proceeding for a refund or redetermination of a tax levied under the property tax laws of this state.

Jurisdiction of the Tax Tribunal over petitions is governed by MCL 205.735a which in relevant part provides:

(6) The jurisdiction of the tribunal in an assessment dispute as to property classified under section 34c of the general property tax act, 1893 PA 206, MCL 211.34c, as commercial real property, industrial real property, developmental real property, commercial personal property, industrial personal property, or utility personal property is invoked by a party in interest, as petitioner, filing a written petition on or before May 31 of the tax year involved.

In *Szymanski v City of Westland*, 420 Mich 301, 305; 362 NW2d 224 (1984), the Michigan Supreme Court explained that when a petitioner fails to timely file a claim within the period set forth in the Tax Tribunal Act and cannot identify an applicable provision granting an extension of time to file, the Tax Tribunal does not have jurisdiction over the untimely claim. Regardless of any reasoning offered by a petitioner, the Tax Tribunal cannot excuse the petitioner's failure to "assert [the] claim within the applicable statutory period of limitation." *Id*. at 303. Further, the meritorious nature of a claim or the constitutional dimension of a claim lacks relevance. *Id*.

This Court held in *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 542-543; 656 NW2d 215 (2002), that the time provisions that govern filing a claim with the Tax Tribunal are jurisdictional and "governs when and how a petition invokes the Tax Tribunal's jurisdiction." Further, this Court concluded that the Tax Tribunal lacks authority to entertain claims or grant delayed appeals. *Id*. at 547-548. This Court explained that in cases where the Tax Tribunal lacks jurisdiction, it cannot act except to dismiss the petition. *Id*. at 544. In *WA Foote Mem Hosp v Jackson*, 262 Mich App 333, 338; 686 NW2d 9 (2004), in applying MCL 205.735, the statute superseded by MCL 205.735a, this Court explained that the petition filing deadline was

jurisdictional and an untimely filing deprived the Tax Tribunal of jurisdiction to consider the petition. This Court found no merit to the petitioner's argument that the filing deadline merely served a procedural purpose. *Id*. at 344.

In this case, the evidence established that Ryan filed Centerpoint's petition after the 11:59 p.m. May 31, 2017 deadline. Under both *Electronic Data* and *WA Foote*, the Tax Tribunal had no authority to accept Centerpoint's untimely filed petition. Because Centerpoint failed to meet the statutory petition filing deadline, the Tax Tribunal lacked jurisdiction to consider Centerpoint's petition and was required to dismiss it. The Tax Tribunal, therefore, correctly dismissed Centerpoint's petition and it properly denied Centerpoint's motion for reconsideration.

Centerpoint next argues that the Tax Tribunal erred by not ruling that Centerpoint timely filed its petition. Centerpoint argues that each time Ryan experienced a delay because it used the same credit card for payment of petition filing fees for its clients a "system-wide outage" occurred, which gave it the right to file its petition on June 1, 2017, after the statutory deadline. Centerpoint contends that the Tax Tribunal failed to correctly interpret and apply administrative Rule 219(4) because the rule required the Tax Tribunal to define "system-wide outage" from Ryan's subjective perspective. We disagree.

"In construing administrative rules, courts apply principles of statutory construction." *Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017) (quotation marks and citation omitted). This Court generally defers to interpretations given by the Tax Tribunal to statutes it is delegated to administer, but in the event of a conflict between a statute and an administrative rule, the statute prevails. *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 366; 891 NW2d 884 (2016). This Court affords "great deference" to an agency's reasonable interpretations of its own rules and orders. *ABATE v Public Serv Comm*, 219 Mich App 653, 661-662; 557 NW2d 918 (1996).

Under Tax Tribunal Rule 201 and 215, the Tax Tribunal's rules govern practice and procedure in all contested cases before it.

Rule 219 prescribes the manner of commencement of a contested case in relevant part as follows:

> (1) A contested case is commenced by mailing or delivering a petition to the tribunal with the appropriate filing fee within the time periods prescribed by statute. A contested case may also be commenced with the tribunal by electronic submission of a petition within the time periods prescribed by statute, if provided for by the tribunal.

> * * *

> (4) Pleadings, motions, and documents are considered filed upon mailing or delivery, as provided by rule 2.107 of the Michigan court rules. Pleadings, motions, and documents may also be submitted through the tribunal's e-filing system, if provided for by the tribunal. *Pleadings, motions, and documents submitted through the tribunal's e-filing system are considered filed upon*

*successful submission of the pleading, motion, or document. Unsuccessful submissions through the tribunal's e-filing system due to a system-wide outage are considered timely if filed on the following business day.* [Emphasis added.]

(5) Submissions . . . through the tribunal's e-filing system by 11:59 p.m. on a business day are considered filed on that business day.

Rule 219 unambiguously requires the Tax Tribunal to consider petitions timely filed if they were successfully submitted through its e-filing system by the statutory deadline. If, however, the e-filing system suffered a "system-wide outage" that caused an unsuccessful submission of a petition before the deadline, Rule 219(4) requires that the Tax Tribunal consider such petition as timely filed if filed the next business day.

In this case, the Tax Tribunal found no ambiguity in Rule 219(4) and concluded that the term "system-wide outage" had to be interpreted objectively. The Tax Tribunal interpreted Rule 219(4) to mean that a "system-wide outage" occurs only if the e-filing system that is maintained by the state or the third-party payment system provider became unavailable to all Tax Tribunal filers because of a malfunction in the state's or the vendor's equipment. Furthermore, such system failure must have proximately caused an actual unsuccessful filing before the deadline. The Tax Tribunal concluded that the subjective expectations of an individual user lacked relevance to the determination of whether a "system-wide outage" occurred because a "system-wide outage" as used in Rule 219(4) means the failure of the system itself.

We conclude that the Tax Tribunal reasonably interpreted the plain language of Rule 219. The Tax Tribunal's objective standard for determining when a "system-wide outage" occurred for invocation of Rule 219(4)'s unsuccessful filing exception requires simple evidentiary confirmation regarding whether a malfunction in the state's or the vendor's equipment occurred.

The Tax Tribunal also read Rule 219(4) to require that a petitioner actually attempted to e-file its submission before the expiration of the statutory filing deadline to establish that an unsuccessful submission occurred enabling it to claim the right to e-file after the deadline. The Tax Tribunal did not err in concluding that, if a petitioner never attempted to e-file before the deadline, such petitioner could not claim an unsuccessful submission within the time period prescribed by statute. Post-deadline e-filing attempts cannot meet the strictures of Rule 219(4) for invocation of the right to e-file on the next business day. Accordingly, we defer to the Tax Tribunal's rational interpretation of its rule. See *Great Lakes Improvement Bd*, 316 Mich App at 661-662.

In this case, the record establishes that Ryan never attempted to e-file Centerpoint's petition until after the statutory deadline. Ryan chose to file other clients' petitions and Centerpoint's petition came late in the order of the petitions Ryan filed. Because neither Centerpoint nor its agent attempted to file its petition before the statutory deadline, Centerpoint could not invoke Rule 219(4)'s exception. Further, evidence established that other e-filers accessed and successfully used the Tax Tribunal's e-filing system during the period that Ryan experienced delays. Moreover, the evidence established that the CEPAS payment program functioned as designed and did not fail in any manner. We conclude that the evidence did not

support Centerpoint's claim that Ryan failed to file its petition because of a "system-wide outage."

In sum, the Tax Tribunal rationally interpreted Rule 219(4)'s term "system-wide outage" and objectively applied the standard to determine that a system-wide outage did not occur in this case. The Tax Tribunal based its conclusion on competent, material, and substantial evidence in the record and it did not misapply the law or adopt a wrong legal principle.

Centerpoint lastly argues that the Tax Tribunal's e-filing system is a "designated delivery system" under MCL 205.735a(7)(c) and Ryan met the requirements of filing using a "designated delivery system" by logging into the e-filing system and commencing filing petitions before the statutory deadline. Centerpoint contends that the Tax Tribunal erred by incorrectly concluding that its e-filing system is not a "designated delivery system" under MCL 205.735a. We disagree.

This claim of error also involves an issue of statutory interpretation and interpretation of an agency rule. MCL 205.735a provides in relevant part:

> (7) A petition is considered filed on or before the expiration of the time period provided in this section or by law if 1 or more of the following occur:

> (c) The petition is given to a designated delivery service for delivery on or before the expiration of that time period and the petition is delivered by that designated delivery service or, if the petition is not delivered by that designated delivery service, the petitioner establishes that the petition was given to that designated delivery service for delivery on or before the expiration of that time period.

* * *

> (11) As used in this section, "designated delivery service" means a delivery service provided by a trade or business that is designated by the tribunal for purposes of this subsection. The tribunal shall issue a tribunal notice not later than December 31 in each calendar year designating not less than 1 delivery service for the immediately succeeding calendar year. The tribunal may designate a delivery service only if the tribunal determines that the delivery service meets all of the following requirements:

> (a) Is available to the general public.

> (b) Is at least as timely and reliable on a regular basis as the United States postal service.

> (c) Records electronically to a database kept in the regular course of business or marks on the petition the date on which the petition was given to the delivery service for delivery.

> (d) Any other requirement the tribunal prescribes.

The plain language of MCL 205.735a(11) makes clear that the Tax Tribunal had a statutory obligation to designate at least one delivery service each year that met the statutory requirements. No evidence in the record in this case indicates that the Tax Tribunal considered its e-filing system a "designated delivery service" for purposes of MCL 205.735a, nor is there any evidence that the Tax Tribunal ever designated its e-filing system a "designated delivery service" as required by the statute. Centerpoint merely offers its conclusion that the Tax Tribunal's e-filing system constituted a "designated delivery service" because petitions could be filed with the Tax Tribunal using the e-filing system. While it appears that the Tax Tribunal's e-filing system was available to the general public and as reliable as the United States Postal Service and recorded when petitions were filed, the record indicates that the Tax Tribunal never designated it a "designated delivery service" for purposes of MCL 205.735a. Accordingly, the Tax Tribunal did not err in concluding that its e-filing system was not a "designated delivery service."

This conclusion is supported by the Tax Tribunal's Rule 219(5), in which the Tax Tribunal separately and distinctly defined when submissions were considered filed depending upon the filing option selected. The rule provides:

Submissions by mail are considered filed on the date indicated by the U.S. postal service postmark on the envelope containing the submissions. Submissions by commercial delivery service are considered filed on the date the submissions were given to the commercial service for delivery to the tribunal as indicated by the receipt date on the package containing the submissions. Submissions by personal service are considered filed on the date the submissions were received. Submissions through the tribunal's e-filing system by 11:59 p.m. on a business day are considered filed on that business day.

The Tax Tribunal interpreted Rule 219(5) as separately and distinctly enumerating when the Tax Tribunal deemed a submission filed through a designated commercial delivery service and when a submission was filed via the e-filing system. The Tax Tribunal concluded that e-filing and commercial delivery deadlines were not interchangeable as Centerpoint argued. We believe that the Tax Tribunal reasonably interpreted Rule 219(5) in conjunction with its interpretation of MCL 205.735a(7) and (11). The rule and the statute when read together make clear that the Tax Tribunal did not designate or consider its e-filing system a "designated delivery service" in the same manner as a commercial delivery service.

Moreover, evidence in the record established that the Tax Tribunal's e-filing system and computer-based case management program were not considered a "trade or business" or "delivery service" that had been designated by the Tax Tribunal under MCL 205.735a(11). Witnesses' testimonies established that the e-filing system served as a process to upload petitions and documents onto the case management system. We conclude that the Tax Tribunal's factual findings that the e-filing system and case management program were not "designated delivery services" were based on competent, material, and substantial evidence in the record. The Tax Tribunal, therefore, did not err by concluding that Ryan did not timely file Centerpoint's petition because it did not use a "designated delivery system" under MCL 205.735a(7)(c). We conclude that the Tax Tribunal did not misapply the law or adopt a wrong legal principle because its e-

filing system was not a "designated delivery service" under MCL 205.735a(11). Therefore, the Tax Tribunal did not err by dismissing Centerpoint's untimely filed petition, and it properly denied its motion for reconsideration.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel