*In re* MCI TELECOMMUNICATIONS CORPORATION COMPLAINT

Docket No. 211814. Submitted October 5, 1999, at Lansing. Decided March 24, 2000, at 9:05 A.M. Leave to appeal sought.

MCI Telecommunications Corporation filed a complaint with the Michigan Public Service Commission (MPSC), alleging that Ameritech Michigan had violated the terms of an earlier MPSC order entered in Case No. U-11038. Case U-11038 involved a challenge by Sprint Communications Company, L.P., AT&T Communications of Michigan, and MCI to Ameritech's implementation of a voluntary "PIC protection" program whereby a customer's preexisting choice of a telecommunication · service provider would not be changed without the customer's authorization. In U-11038, the MPSC found that an insert sent by Ameritech to its customers with their bills was false, misleading, and deceptive in its description of the nature and effect of the PIC protection program as it concerned intraLATA service and ordered Ameritech to send its customers a corrective bill insert. The MPSC further ordered that Ameritech not apply its PIC protection program to requests for changes in intraLATA service except under a specified condition until six months after mailing the corrective insert, ordered that Ameritech was not to attempt to dissuade its customers from changing service providers during any telephone calls made to it by its customers seeking to request service changes under the PIC protection program, and ordered Ameritech to permit verification of requested service changes by any of the four methods that had been authorized by the Federal Communications Commission, including the use of a letter of agency or authorization (LOA) or third-party verification (TPV), or by three-way conference calls with the consent of its customers. Ameritech had appealed the order in U-11038, and the Court of Appeals affirmed. *In re Sprint Communications Company, LP, Complaint*, 234 Mich App 22 (1999). In the complaint in this matter, MCI alleged that since the expiration of the six-month moratorium period imposed by the MPSC in its order in U-11038 Ameritech had refused to process requests for a change of intraLATA service provider made by MCI on behalf of customers in the PIC protection program where the requests were verified by TPV or a LOA and Ameritech service representatives had engaged in improper conduct during conference calls concerning requests for a change of intraLATA service

provider by trying to persuade the customers not to change their intraLATA service provider, refusing to participate in three-way calls, and using confidential customer data to try to sell the customer additional Ameritech services and features. In addition to other relief, MCI sought to recover compensatory damages and litigation expenses, including attorney fees. Ameritech responded that the order in U-11038 permitted it to apply the provisions of its PIC protection program with respect to requests for a change of intraLATA service provider made after the end of the six-month moratorium period and, accordingly, that it could properly refuse to honor requests for a change of intraLATA service provider that were made on behalf of customers in its PIC protection program where the verification of the request for the change was supported by TPV or a LOA. Ameritech further asserted that it had not engaged in any misconduct during three-way conference calls and that if it had used confidential customer information and attempted to sell other Ameritech products during those calls, such activities would not have violated the provisions of the order in U-11038. The MPSC found that Ameritech had violated the provisions of the order in U-11038 by refusing to implement changes in intraLATA service providers for customers in its PIC protection program where the requested change was verified only by TPV or by a LOA and by repeatedly engaging in improper conduct during three-way conference calls. The MPSC ordered Ameritech to cease and desist from those violations, but declined to fine Ameritech for past violations, stating that it was persuaded that Ameritech's misinterpretation of the order in U-11038 constituted a mitigating circumstance. The MPSC denied MCI's claim for compensatory damages for lost profits, finding that MCI's proofs of lost profits were too speculative, but it awarded MCI attorney fees pursuant to § 601 of the Michigan Telecommunications Act, MCL 484.2601; MSA 22.1469(601). Ameritech appealed, and MCI cross appealed.

The Court of Appeals *held*:

1. A party challenging an order of the MPSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful and unreasonable. The Court of Appeals accords substantial deference to the MPSC's interpretation of its own orders and ordinarily will uphold the MPSC's interpretations as long as they are supported by the record or otherwise reasonable.

2. The MPSC's interpretation and finding that Ameritech violated the provisions of the order in U-11038 by refusing to implement changes of intraLATA service providers for customers in its PIC protection program where the requested change was verified only by TPV or by a LOA were supported by the record. The language in the

opinion in U-11038 that Ameritech is not free to invalidate PIC change procedures that had been approved by the FCC and the MPSC belies Ameritech's argument that after the initial six-month moratorium period it could rely on the provisions of its PIC protection program and refuse change requests that were verified only by TPV or by a LOA.

3. The MPSC properly considered the language in the opinion portion of the combined opinion and order in U-11038 in resolving any uncertainties concerning the meaning and intent of the order in U-11038. Because the MPSC did not impose any penalty on Ameritech for its past violation of the provisions of the order in U-11038, the MPSC was not obliged to resolve any ambiguities in Ameritech's favor. Any vagueness concerns with respect to the order in U-11038 have now been cured by the clarification provided in the order in this matter. Because there were no new prohibitions imposed on Ameritech in this matter, but rather only the nature and scope of the prohibitions imposed in U-11038 were clarified and given prospective effect, Ameritech's due process rights were not violated by the absence of a new hearing to determine the propriety of Ameritech's conduct.

4. Although the MPSC's interpretation in this matter of the meaning and intent of its opinion and order in U-11038 has the effects of rendering Ameritech's PIC protection program meaningless in the area of intraLATA service and of changing the six-month moratorium into a permanent moratorium, the MPSC is entitled to render such an interpretation.

5. The MPSC did not err in finding that Ameritech's use of confidential consumer data and its attempting to market other products and services during three-way conference calls relating to a change of intraLATA service provider were prohibited by the provision in the order in U-11038 that prohibited Ameritech from trying to dissuade its customers from changing intraLATA service providers. The order in the present matter specifically prohibiting those practices was an appropriate clarification of the meaning and intent of the provisions of the order in U-11038 and raises no due process concerns because it was given prospective effect.

6. Ameritech's claim that certain testimony given at an evidentiary hearing in this matter was inadmissible hearsay was not preserved for appellate review, and, even if preserved, the claim is without merit.

7. Ameritech's claim that it was entitled to a jury trial with respect to MCI's claim of damages is without merit. The right to a jury trial under Const 1963, art 1, § 14 extends only to causes of action that were part of the common law or were similar in charac-

ter to cases in which the right to a jury trial existed before the adoption of the constitution. The damages sought here were based on allegations of anticompetitive conduct arising out of violations of orders issued by the MPSC pursuant to its authority under the Michigan Telecommunications Act, MCL 484.2101 *et seq.*; MSA 22.1469(101) *et seq.*, and were thus part of a legislatively created right and remedy that was not subject to the constitutional jury trial requirement.

8. Although Ameritech failed to preserve for appellate review the issue whether the MPSC erred in awarding attorney fees pursuant to § 601 of the Michigan Telecommunications Act, the issue may be addressed, because it is a question of law for which no factual development is necessary. The Court of Appeals has determined that § 601 does not confer on the MPSC the authority to award attorney fees. Accordingly, the MPSC's award of attorney fees must be vacated.

9. The MPSC properly determined that MCI had the burden of persuasion of showing with reasonable certainty that it had suffered economic loss as the result of Ameritech's actions. MCI has failed to establish by clear and satisfactory evidence that the MPSC erred in its determination that MCI's proofs were insufficient to establish with reasonable certainty that it had suffered lost profits.

Affirmed in part and vacated in part.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION ORDERS — APPEAL.

    A party challenging an order of the Public Service Commission bears the burden of proving by clear and satisfactory evidence that the order is unlawful and unreasonable; the Court of Appeals accords substantial deference to the interpretation given by the Public Service Commission to its own orders and ordinarily will uphold the commission's interpretations as long as they are supported by the record or otherwise reasonable.

2. TELECOMMUNICATIONS — DAMAGES — JURY TRIAL — ANTICOMPETITIVE CONDUCT — PUBLIC SERVICE COMMISSION.

    There is no right to a jury trial with respect to a claim of damages made by a telecommunications company in a complaint filed with the Public Service Commission where the damages sought were based on allegations of anticompetitive conduct arising out of violations of orders issued by the Public Service Commission pursuant to its authority under the Michigan Telecommunications Act (MCL 484.2101 *et seq.*; MSA 22.1469[101] *et seq.*).

3. TELECOMMUNICATIONS — ATTORNEY FEES — PUBLIC SERVICE COMMISSION.

    The Public Service Commission lacks authority under the Michigan Telecommunications Act to award attorney fees to a prevailing

party in proceedings brought before the commission under that act (MCL 484.2601; MSA 22.1469[601]).

4. TELECOMMUNICATIONS — PUBLIC SERVICE COMMISSION — DAMAGES — BURDEN OF PROOF.

A telecommunications company seeking damages in a proceeding before the Public Service Commission for anticompetitive conduct undertaken by another telecommunications company in violation of an order of the Public Service Commission has the burden of persuasion of showing with reasonable certainty that it suffered economic loss as the result of the anticompetitive conduct.

*Dickinson Wright PLLC* (by *Joseph A. Fink, John M. Dempsey, Jeffery V. Stuckey,* and *Jennifer L. Frye*), for Ameritech Michigan.

*Dykema Gossett PLLC* (by *Robert J. Franzinger, Albert Ernst, Lori Silsbury,* and *Thomas S. Bishoff*) (*Thomas F. O'Neil, III,* and *Adam H. Charnes,* of Counsel), for MCI Telecommunications Corporation.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges* and *Patricia Barone,* Assistant Attorneys General, for the Public Service Commission.

Before: HOEKSTRA, P.J., and McDONALD and METER, JJ.

METER, J. Ameritech Michigan appeals as of right from an order of the Michigan Public Service Commission (MPSC), in which the MPSC ruled that Ameritech had violated the terms of an earlier MPSC order. MCI Telecommunications Corporation cross appeals, challenging the MPSC's denial of MCI's request for compensatory damages allegedly resulting from Ameritech's violation of the earlier order. We affirm in part and vacate in part.

FACTUAL BACKGROUND

This case involves Ameritech's use of a voluntary "PIC protection" program. Such programs are designed to prevent the practice known as "slamming," whereby a customer's preexisting choice of a PIC,[1] or telecommunications service provider, is changed without the customer's consent. In 1992, in order to protect against "slamming," the Federal Communications Commission (FCC) adopted four PIC change verification procedures for use in the interstate long distance market. Specifically, the FCC provided, in 47 CFR 64.1100 and 47 CFR 64.1150, that a PIC change could be verified by (1) a written letter of agency or authorization (LOA) from the customer granting a provider authority to request the PIC change on the customer's behalf; (2) third-party verification (TPV), in which a qualified and independent third party obtains the customer's oral authorization for the PIC change; (3) electronic confirmation from the customer through the use of a toll-free telephone number; or (4) the customer's return of a prepaid postcard that is sent to the customer in an information package regarding the PIC change.[2]

Ameritech decided to offer a voluntary PIC protection program that had a more stringent verification requirement than those contained in the FCC procedures. The program allowed no change in the cus-

---

[1] "PIC" is an acronym for "Primary Interexchange Carrier," although the term is now used to refer to virtually any type of presubscribed telecommunications provider, not just to interexchange carriers.

[2] After the proceedings in the instant case, the FCC decided to eliminate PIC change verification using TPV in cases where a preferred carrier freeze exists. See *Second Order and Further Notice of Proposed Rule Making*, FCC 98-334 (released December 23, 1999); see also 47 CRF 64.1190.

tomer's PIC choice unless and until the customer authorized the change by contacting Ameritech directly. In December 1995, Ameritech sent a bill insert to its customers urging them to sign up for the voluntary PIC protection program. The bill insert was sent shortly before the conversion to a new dialing system for intraLATA calls that served to foster competition in the intraLATA market.

LATAS (Local Access Transport Areas) are geographic regions that roughly correspond to telephone area code regions. In the telecommunications industry, long distance telephone calls between LATAS are known as "interLATA" calls, and local long distance calls sent and received within a single LATA are known as "intraLATA" calls. For many years, local exchange carriers such as Ameritech exclusively serviced all intraLATA calls made by 1+ dialing (i.e., by simply dialing a 1 before the number to be called). In 1994, however, the MPSC ordered a conversion to 1+ dialing parity, meaning that whenever 1+ dialing is used for an intraLATA call, the call is now served by a provider presubscribed by the customer (i.e., the call is not immediately served by a local carrier such as Ameritech). Ameritech sent its PIC protection bill insert just before the implementation of 1+ dialing parity for intraLATA calls.

Sprint Communications Company filed a complaint against Ameritech with the MPSC, alleging that Ameritech's bill insert was misleading and anticompetitive in violation of the Michigan Telecommunications Act (MTA), MCL 484.2101 *et seq.*; MSA 22.1469(101) *et seq.* The proceedings on the complaint were docketed by the MPSC as Case No. U-11038.

On August 1, 1996, the MPSC issued an opinion and order in Case No. U-11038, finding that Ameritech's bill insert was misleading, deceptive, and timed to impede the transition to intraLATA presubscription competition. Accordingly, the MPSC concluded that the bill insert violated the MTA and the MPSC's previous orders requiring intraLATA dialing parity competition. The MPSC also reasoned that Ameritech's PIC protection program, as advertised to Ameritech's intraLATA customers through a misleading and deceptive bill insert, was anticompetitive in effect. The MPSC stressed, however, that aside from the effect of the deceptive promotion, the MPSC was not finding anything inappropriate about Ameritech's PIC protection program in and of itself.[3]

As a result of Ameritech's misconduct, the MPSC ordered the following remedies:

---

[3] We note that after the MPSC issued its ruling in this case, Ameritech discontinued its PIC protection program. In July 1998, Public Acts 259 and 260 were enacted, effective October 1, 1998, amending §§ 505-506 of the MTA to direct the MPSC to adopt antislamming PIC change verification procedures. In light of the new legislation, the MPSC conducted a public hearing on PIC protection in Case No. U-11757. In an opinion and order issued September 23, 1998, the MPSC adopted rules requiring all telecommunications provider changes to be verified by one of four verification procedures similar to those adopted by the FCC or by three-way conference calling. The MPSC also ruled that local exchange carriers could adopt their own PIC protection programs, subject to certain requirements. The MPSC explained that customers with such enhanced PIC protection would still be allowed to use the same PIC change verification procedures as other customers (e.g., TPV and LOA), but proof of such verification would have to be actually received by the carrier before the PIC change could be implemented. The MPSC reasoned that this would give customers enhanced protection from slamming while maintaining their ability to change service providers without unnecessary hardship or delay. Subsequently, after the FCC determined that verification by TPV was insufficient for PIC change requests in cases where a preferred carrier freeze exists (see note 2, *supra*), the MPSC revised its standards, in Case No. U-11900, to conform with the FCC's determination.

A. Ameritech Michigan shall cease and desist from violations of the Michigan Telecommunications Act, 1991 PA 179, as amended by 1995 PA 216, MCL 484.2101 *et seq.*; MSA 22.1469(101) *et seq.*

B. Ameritech Michigan shall comply with the Commission's orders requiring the implementation of intraLATA dialing parity.

C. Ameritech Michigan shall mail to all of its customers a corrective bill insert no later than the September billing cycle in conformity with this order and shall provide notice to the Commission that it has done so.

D. Ameritech Michigan shall apply PIC protection requests received beginning December 1995 only to interLATA service. It shall not apply PIC protection requests to intraLATA and basic local exchange services until six months after mailing the corrective bill insert unless the customer has first affirmatively selected a provider for those services and then requests PIC protection.

E. When a customer with PIC protection calls to request that Ameritech Michigan change his or her service providers, it shall not use that contact to try to persuade the customer not to change providers.

F. Ameritech Michigan shall permit the verification of PIC changes by any [of the four procedures adopted by the FCC] and shall also permit three-way conference calls with the consent of the customer.

The instant case concerns Ameritech's compliance with paragraphs E and F above.[4]

In October 1997, MCI filed a two-count complaint with the MPSC, alleging that (1) since April 1, 1997, when the six-month moratorium imposed by the MPSC on the application of Ameritech's PIC protection program to intraLATA customers ended, Ameritech refused to process over 20,000 intraLATA PIC change

---

[4] The MPSC's decision in Case No. U-11038 was affirmed by this Court in *In re Sprint Communications Co, LP, Complaint,* 234 Mich App 22; 592 NW2d 825 (1999).

requests submitted by MCI, despite the fact that all these requests were properly verified by either TPV or a LOA; and (2) Ameritech's service representatives had been engaging in improper conduct during three-way PIC change conference calls, such as trying to persuade customers not to change intraLATA carriers, refusing to participate in three-way calls, and using confidential customer data to try to sell customers additional Ameritech services and features. In addition to other relief, MCI sought to recover compensatory damages and litigation expenses, including attorney fees.

Ameritech contended that its refusal to accept verifications by TPV or a LOA as sufficient for intraLATA PIC changes on its customers' accounts was not a violation of the MPSC's August 1, 1996, order in Case No. U-11038, because the MPSC had allowed Ameritech, after the six-month moratorium, to apply its own PIC protection plan and to refuse verifications by TPV or a LOA. Ameritech further contended that (1) it had not engaged in any misconduct during three-way conference calls and (2) the use of confidential customer information and attempts to sell other Ameritech products during the calls, even if these activities had occurred, would not have violated the order in Case No. U-11038.

In a May 11, 1998, opinion and order, the MPSC adopted the hearing officer's conclusion that Ameritech had violated the MPSC's order in Case No. U-11038. The MPSC found that Ameritech (1) improperly refused to implement intraLATA changes that were verified only by TPV or a LOA for customers with PIC protection, and (2) repeatedly engaged in improper conduct during three-way conference calls. The MPSC

ordered Ameritech to cease and desist its various types of violations, but declined to fine Ameritech for the past violations. The MPSC stated that it was persuaded that Ameritech's misinterpretation of the order in Case No. U-11038 constituted a mitigating circumstance.

With regard to MCI's claim for compensatory damages for lost profits, the MPSC ruled that MCI's proofs were too speculative to support any award for lost profits. In particular, the MPSC noted defects in MCI's calculation of expenses, number of lost customers, and lost minutes of usage. The MPSC did, however, award attorney fees under § 601 of the MTA, which allows the MPSC to order "remedies and penalties" for those who have suffered "economic loss." See MCL 484.2601; MSA 22.1469(601).

### THE MPSC'S REQUIREMENT THAT AMERITECH ALLOW VERIFICATION BY TPV OR LOA FOR CUSTOMERS IN THE PIC PROTECTION PROGRAM

Ameritech first argues that the MPSC erred in concluding that Ameritech violated the order in Case No. U-11038 by failing to implement PIC change orders verified only by TPV or a LOA for customers enrolled in Ameritech's PIC protection program. Ameritech argues that because the earlier order did not *cancel* Ameritech's PIC protection program, but merely placed a six-month moratorium on it, Ameritech was free to implement the program after the six months had expired. Because the program specifically required direct notification from the customer in order for any PIC changes to occur, Ameritech believes that it properly denied the PIC change requests that were verified only by TPV or a LOA.

Our review of MPSC orders is relatively narrow in scope. See *In re MCI Telecommunications Complaint*, 460 Mich 396, 426-427; 596 NW2d 164 (1999). A party challenging an order of the MPSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. *In re Sprint Communications Co, LP, Complaint*, 234 Mich App 22, 34; 592 NW2d 825 (1999). "A decision of the MPSC is unlawful when it involves an erroneous interpretation or application of law, and unreasonable when it is unsupported by the evidence." *Id.* When an evidentiary hearing is required, the MPSC's factual determinations must be supported by competent, material, and substantial evidence on the whole record. *Id.*; Const 1963, art 6, § 28.

With regard to issues of interpretation of MPSC orders in particular, this Court accords substantial deference to the MPSC's interpretations of its own orders, and this Court ordinarily will uphold the MPSC's interpretations as long as they are supported by the record or otherwise reasonable. *ABATE v Public Service Comm*, 219 Mich App 653, 661-662; 557 NW2d 918 (1996).

We conclude that the MPSC's interpretation of its order in Case No. U-11038, and its corresponding finding that Ameritech violated this order by refusing to accept verification by TPV or a LOA for PIC change requests received for customers enrolled in its PIC protection program, were supported by the record. Indeed, paragraph F of the prior opinion and order, quoted above, mandated that Ameritech permit the verification of PIC changes by TPV or a LOA. The MPSC did not indicate that verification by TPV or a LOA was to apply only to those customers not enrolled in

Ameritech's voluntary PIC protection program. Indeed, restricting verification by TPV or a LOA only to those customers not enrolled in Ameritech's PIC protection program would have been superfluous, because these verification procedures already applied to such customers under the MPSC's opinion in Case No. U-10138 (in which the MPSC adopted the FCC's four PIC change verification procedures for use in Michigan's intraLATA market).

Moreover, the MPSC, in the body of its opinion, specifically indicated that Ameritech "is not free to invalidate PIC change procedures the FCC and this Commission have approved." Ameritech argues that this language, and any other language contained in the body of the MPSC's opinion, should have been disregarded, because courts and administrative tribunals speak through their judgments and orders rather than their opinions. We disagree. As the MPSC notes, a dispositive judgment or order may incorporate or otherwise include an opinion. See, e.g., MCR 7.215(D)(1) (opinions of the Court of Appeals are judgments) and *Master Craft Engineering, Inc v Dep't of Treasury*, 141 Mich App 56, 74; 366 NW2d 235 (1985) (findings and conclusions of hearing officer's fourteen-page proposed judgment incorporated into final agency order). The MPSC correctly notes that its "opinion" in case No. U-11038 was effectively incorporated into its dispositive "order" by virtue of the opinion and order being issued as a single, undivided "opinion and order" document. Moreover, even if the MPSC had issued an opinion separate from its order, it would still have been appropriate to use the MPSC's opinion as a guide for resolving any uncertainties about the MPSC's order. See 20 Am Jur 2d, Courts, § 39, p 360.

Accordingly, the MPSC did not err in looking to the body of its opinion in Case No. U-11038.

Nor, contrary to Ameritech's argument, did the MPSC err in failing to resolve any ambiguities in the order in Ameritech's favor. The authority cited by Ameritech in this regard involved the question whether contempt penalties should be imposed for violating the terms of an order. See *Grace v Center for Auto Safety*, 72 F3d 1236, 1241 (CA 6, 1996). Here, the MPSC did not impose any penalties against Ameritech for violating either the letter or the spirit of the order in Case No. U-11038.[5] To the contrary, the MPSC rejected the hearing officer's recommendation that Ameritech be fined for its violations. In doing so, the MPSC stated that there were "mitigating circumstances," specifically indicating that it was persuaded by Ameritech's argument that the violations arose from actions taken pursuant to Ameritech's reasonable interpretation of the prior order.

Because the MPSC did not sanction Ameritech for its past violations, Ameritech's vagueness and due process objections also lack merit. Any vagueness in the terms of the MPSC's order in Case No. U-11038 is now cured by the clarification provided by the MPSC's May 11, 1998, opinion and order in the present case. As MCI correctly notes, the MPSC's cease and desist order in the present case is prospective in application, and it is therefore unaffected by any defects that may have existed in the MPSC's previous opinion and order. That is, while Ameritech may be excused for violations that occurred in the past because of its misun-

---

[5] Although the MPSC did award attorney fees to MCI, our decision today, as will be explained, vacates this award.

derstanding of the MPSC's order in Case No. U-11038, this is no reason to excuse Ameritech from future compliance now that the MPSC has removed any basis for misunderstanding.[6]

Ameritech contends that its due process rights would be violated if the MPSC were allowed to impose new, prospective prohibitions against conduct that was not previously prohibited by the MPSC's order in Case No. U-11038 without first conducting a new hearing to determine whether the conduct violates the MTA. This argument ignores the fact that the MPSC is not imposing any new prohibitions that the MPSC did not intend to impose before. Rather, the MPSC has simply clarified the scope of the prohibitions it intended to result from its previous order and the hearing that took place at that time. In other words, the "new" prohibitions address conduct that was also prohibited by the MPSC's previous order. While Ameritech may be excused for failing to abide by those prohibitions because of ambiguities in the previous order, the MPSC's removal of those ambiguities does not entitle Ameritech to a new hearing.

We agree with Ameritech that the MPSC's interpretation of its order in Case No. U-11038 rendered Ameritech's voluntary PIC protection program essentially void in the area of intraLATA service (because Ameritech must allow forms of PIC change verification other than that specified in Ameritech's PIC protection program). Indeed, the MPSC's interpretation essentially changed the six-month moratorium contained in para-

---

[6] We note, however, that the MPSC should refrain from ordering Ameritech to allow verification by TPV for PIC change requests in cases where a preferred carrier freeze exists, now that verification by TPV in such cases has been rejected by both the FCC and the MPSC. See notes 2 and 3, *supra*.

graph D of the order in Case No. U-11038 into a permanent moratorium. This permanent moratorium arguably contradicted the MPSC's statement in the prior order that Ameritech's PIC protection program, if it had not been improperly marketed with misleading bill inserts, might have been appropriate. However, any ambiguities and internal inconsistencies in the prior order have now been resolved by the order in the instant case. Moreover, while the MPSC's interpretation of its order may have rendered Ameritech's PIC protection plan virtually meaningless in the area of intraLATA service, the MPSC was nonetheless entitled to render such an interpretation. Because the MPSC has awarded only prospective "cease and desist" relief, Ameritech's misunderstanding of the previous MPSC order provides no basis for reversal.

### THE PROHIBITION AGAINST USING CONFIDENTIAL CUSTOMER DATA AND ATTEMPTING TO SELL AMERITECH PRODUCTS DURING THREE-WAY CALLS

Next, Ameritech argues that the MPSC erred in finding that Ameritech violated the order in Case No. U-11038 by using confidential customer data and attempting to sell customers additional Ameritech products during three-way PIC change verification calls. Ameritech contends that the MPSC's order in Case No. U-11038 did not prohibit such conduct. Ameritech argues that the order in Case No. U-11038 merely prohibited Ameritech from trying to dissuade customers from changing service providers during three-way calls and that there was no competent evidence that Ameritech ever attempted to influence customers in this manner.

Again, this Court accords substantial deference to the MPSC's interpretations of its own orders, and this Court ordinarily will uphold the MPSC's interpretations as long as they are supported by the record or otherwise reasonable. *ABATE, supra* at 661-662.

We disagree that the MPSC erred in concluding that the previous order prohibited the use of confidential information or the marketing of Ameritech products during three-way calls. The order in Case No. U-11038 specifically indicated that Ameritech was not to discuss confidential or proprietary information with customers during three-way calls. Moreover, while the earlier order did not specifically address the matter of Ameritech marketing other toll products and services to customers during three-way calls, the hearing officer reasoned that such conduct violated the order because of its tendency to dissuade customers from changing providers. The MPSC agreed with the hearing officer, stating that its earlier decision "authorized the use of three-way calls solely as a means of verifying a PIC change and not as a vehicle for Ameritech Michigan to market its services." We defer to the MPSC's interpretation of the intended scope of its previous order. See *ABATE, supra* at 661-662.

Moreover, because the MPSC awarded only prospective relief and did not penalize Ameritech for past violations of the order in Case No. U-11038, Ameritech cannot legitimately claim that its due process rights were violated because it was held liable for violating the "spirit," rather than the letter, of the MPSC's previous order. The decision in the instant case clarified the terms of the previous order by specifically prohibiting Ameritech from using customer data or marketing other Ameritech products during three-way PIC

change conference calls. After the MPSC clarified the terms of its previous order in this manner, it appropriately ordered Ameritech to "cease and desist" from violating those terms in the future, while recognizing that Ameritech could be excused from any penalties for violations that occurred in the past because of its misunderstanding of the earlier order.

THE MPSC'S FACTUAL DETERMINATION THAT AMERITECH
ENGAGED IN IMPROPER ACTIVITIES DURING THREE-WAY CALLS

Next, Ameritech argues that there was insufficient evidence to support the MPSC's finding that Ameritech engaged in improper activities during three-way calls, because the only person who arguably provided probative testimony about these allegedly improper activities, Todd Gerdes,[7] actually provided minimally relevant, unreliable testimony. We disagree. As indicated earlier, the MPSC's finding in this regard had to be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; see also *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 354; 564 NW2d 519 (1997). Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence. See *Korzowski v Pollack Industries*, 213 Mich App 223, 228; 539 NW2d 741 (1995). Black's Law Dictionary (6th ed), p 1345, defines "scintilla" as "the least

---

[7] Todd Gerdes, MCI's Executive Director of Mass Market Sales, testified that he monitored approximately fifteen to twenty calls involving Ameritech Michigan PIC change requests from MCI's three-way calling center in Memphis, Tennessee. According to Gerdes, Ameritech service representatives engaged in improper conduct during each of the calls.

particle." *Random House Webster's College Dictionary* (1997), p 1159,  defines "scintilla" as "a minute particle; spark; [or] trace." Here, there was more than "a minute particle" or "the least particle" of evidence supporting the MPSC's decision.

Indeed, Gerdes supplied substantial evidence that Ameritech engaged in improper activities during three-way calls, and the weight and credibility of Gerdes' testimony was for the MPSC to determine. See *In re Sprint, supra* at 39. Moreover, even without Gerdes' testimony, the deposition testimony of Keith Breidinger and Eulalia Miller supported the MPSC's finding of repeated violations. Although Ameritech asserts that those witnesses only described two isolated incidents that were not in accordance with Ameritech's three-way call procedures, their testimony nevertheless showed at least more than one violation of the MPSC's prior order as interpreted by the MPSC.

### ADMISSIBILITY OF TODD GERDES' TESTIMONY

Next, Ameritech argues that the MPSC should have excluded Gerdes' testimony because (1) it constituted hearsay and (2) Gerdes did not preserve his notes regarding the substance of the testimony. We conclude that Ameritech failed to preserve this issue for appeal, because it failed to raise the issue of the admissibility of Gerdes' testimony in its exceptions to the hearing officer's proposal for decision. See *Attorney General v Public Service Comm*, 174 Mich App 161, 164-167; 435 NW2d 752 (1988).  Even if this issue *had* been preserved, we would find no basis for relief, because (1) the statements about which Gerdes testified were not offered to prove the truth of the matter

asserted and therefore did not constitute hearsay, see MRE 801(c) and *Hilliard v Schmidt*, 231 Mich App 316, 318; 586 NW2d 263 (1998); and (2) the absence of Gerdes' notes was relevant to the weight, not to the admissibility, of his testimony.

### RIGHT TO A JURY TRIAL

Next, Ameritech argues that the MPSC erred in denying its motion for partial summary disposition based on Ameritech's alleged right to a jury trial under the Michigan Constitution. Ameritech believes that it had the right to a jury trial with respect to the issue of damages and that because the MPSC does not have the authority to conduct jury trials, the MPSC should have dismissed MCI's complaint. This issue presents a question of law. We review questions of law de novo. *Miller v Allied Signal, Inc*, 235 Mich App 710, 715; 599 NW2d 110 (1999).

Const 1963, art 1, § 14 preserves the right to a jury trial "in causes of action which were part of the common law prior to its adoption or were similar in character to cases in which the right to a jury trial existed prior to its adoption." *Tomlin v Dep't of Social Services*, 154 Mich App 675, 689; 398 NW2d 490 (1986). An exception to the right to a jury trial exists when the Legislature creates new public rights and remedies and delegates the enforcement of those rights and remedies to an administrative tribunal. *Id.*; see also 47 Am Jur 2d, Jury, § 31, p 736. As noted in *Granfinanciera, SA v Nordberg*, 492 US 33, 54; 109 S Ct 2782; 106 L Ed 2d 26 (1989), the government need not be a party for a case to revolve around "public rights." Rather, the key question is whether the statutory right is so closely integrated into a public regula-

tory scheme as to be appropriate for resolution by an administrative agency. *Id.*

Here, MCI's allegations of anticompetitive conduct concerned violations of orders that the MPSC issued pursuant to its authority under the MTA to regulate the conditions for telecommunications services in the public interest. Thus, MCI's allegations involved matters integral to the administrative scheme established by the MTA. Moreover, the enactment of the MTA created "new public rights and remedies,"[8] whose enforcement was delegated to an administrative tribunal—the MPSC. Accordingly, the instant case fell within the exception to the right to a jury trial, see *Tomlin, supra* at 689, and the hearing referee properly denied Ameritech's motion for partial summary disposition.

### AWARD OF ATTORNEY FEES

Next, Ameritech argues that the MPSC erred in awarding attorney fees to MCI under § 601 of the MTA, which allows the MPSC to order "remedies and penal-

---

[8] We reject Ameritech's assertion that claims under the MTA involve nothing new and different from the common-law tort of unfair competition. Indeed, the common-law doctrine of unfair competition was ordinarily limited to acts of fraud, bad-faith misrepresentation, misappropriation, or product confusion. See generally 54A Am Jur 2d, Monopolies, Restraints of Trade and Unfair Trade Practices, § 1107 *et seq.*, pp 361-384. In contrast, the MTA is much broader in scope, allowing the MPSC to prohibit conduct that it finds to be "adverse to the public interest." See MCL 484.2205(2); MSA 22.1469(205)(2). Indeed, the orders and violations at issue in this case stem from the MPSC's decision to require conversion to intraLATA dialing parity in order to serve the public interest. See *GTE North, Inc v Public Service Comm*, 215 Mich App 137, 157; 544 NW2d 678 (1996). Cf. *Richard/Allen/Winter, Ltd v Waldorf*, 156 Ill App 3d 717, 720-722; 509 NE2d 1078 (1987) (no right to jury trial exists under Illinois Consumer Fraud and Deceptive Business Practices Act where act affords broader protection than common-law action for fraud).

ties" for those who have suffered "economic loss" as a result of the violation of the MTA. See MCL 484.2601; MSA 22.1469(601). Ameritech failed to properly preserve this issue, because it failed to raise it in its exceptions to the hearing officer's proposal for decision. See *Attorney General, supra* at 164-167. Nevertheless, because this issue is one of law, and no development of facts is necessary for its resolution, we will address it. See *Westfield Cos v Grand Valley Health Plan*, 224 Mich App 385, 387; 568 NW2d 854 (1997).

We review questions of statutory interpretation de novo. *Benedict v Dep't of Treasury*, 236 Mich App 559, 563; 601 NW2d 151 (1999). However, "[a]lthough it remains our responsibility to determine the meaning of the statute, we give 'appropriate deference' to the agency's interpretation." *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998). We "ordinarily defer[] to the construction of a statute by the agency charged with applying it unless the interpretation is 'clearly wrong.' " *Id.*

After the parties' briefs were filed in this appeal, this Court issued a published opinion holding that § 601 does not provide the MPSC with authority to award attorney fees, as Ameritech has argued here. *In re Complaint of Southfield*, 235 Mich App 523, 533-535; 599 NW2d 760 (1999). Accordingly, the MPSC's award of attorney fees is vacated.

CUMULATIVE ERROR

Finally, Ameritech argues that the MPSC's order should be reversed because of cumulative error. Because we have identified only one error with the

MPSC's decision (the award of attorney fees) and have rectified that error, Ameritech's argument regarding cumulative error is unavailing.

## DENIAL OF COMPENSATORY DAMAGES

Cross-appellant MCI argues that the MPSC erred in denying its request for compensatory damages on the basis that MCI's claim for damages was too speculative. We disagree. As stated earlier, our review of MPSC orders is relatively narrow in scope. *In re MCI, supra* at 426-427. A party challenging an order of the MPSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. *In re Sprint, supra* at 34.

The MPSC identified a number of defects in MCI's proofs regarding lost profits. While some of those defects were relatively minor and could be corrected by making simple mathematical adjustments (such as reducing the number of lost customers), some of the defects concerned matters for which the MPSC lacked adequate information to make the necessary adjustments (such as information regarding incremental network and general and administrative costs attributable to intraLATA service). Moreover, the magnitude of the defects raised doubt concerning the reliability of the information provided by MCI. Indeed, there was a wide disparity between the average profit per minute testified to by MCI's main witness on lost profits and the average profit per minute shown for both interLATA and intraLATA profits in MCI's other internal reports.

MCI's argument is partly based on the assumption that the MPSC could deny MCI's claim for compensa-

tory damages only if the MPSC actually found that MCI lost no profits. However, as the trier of fact, the MPSC was only required to determine whether MCI had met its burden of persuasion to prove reasonably certain economic loss. See *Body Rustproofing, Inc v Michigan Bell Telephone Co*, 149 Mich App 385, 390; 385 NW2d 797 (1986) ("Before lost profits are recoverable, they must be proven with a reasonable degree of certainty as opposed to being based on mere conjecture or speculation.") As indicated earlier, there were significant defects in MCI's proofs regarding lost profits. The MPSC's assessment of these defects was a determination of the weight and credibility of the evidence and is entitled to deference on appeal.[9] *In re Sprint, supra* at 39.

The MPSC's award of attorney fees is vacated, but the decision is affirmed in all other respects.

---

[9] Additionally, it is questionable whether any compensatory damages should have been awarded in this case even if MCI had proved them with reasonable certainty. When deciding not to impose any fines against Ameritech, the MPSC stated that it was persuaded by Ameritech's argument that it should not be penalized for reasonably misinterpreting the MPSC's order in Case No. U-11038. The same reasoning should also apply to Ameritech's liability for compensatory damages. Indeed, if Ameritech's interpretation of the earlier order was reasonable, albeit incorrect, the fault for MCI's losses rests as much with the MPSC as it does with Ameritech.