*In re* COMPLAINT OF BIERMAN AGAINST CENTURYTEL
OF MICHIGAN, INC

Docket No. 219388. Submitted February 6, 2001, at Lansing. Decided April
13, 2001, at 9:00 A.M.

Glenda Bierman filed a complaint in the Public Service Commission
against CenturyTel of Michigan, Inc., the provider of local exchange
telecommunication services to her residence in Newport, Michigan,
after CenturyTel assessed toll charges and required eleven-digit
dialing (1 + area code + number) for calls made to an Internet
access number in the Monroe, Michigan, exchange maintained by a
competing local exchange carrier, BRE Communications, LLC,
doing business as Phone Michigan, but still within Bierman's local
calling area as described in CenturyTel's tariff filed with the PSC.
There was no interconnection agreement between CenturyTel and
Phone Michigan covering Bierman's telephone service, and Cen-
turyTel had routed the calls in question to the Internet service pro-
vider's equipment in Flint, Michigan, rather than a Monroe location.
Calls by CenturyTel customers in Newport to Monroe exchange
numbers provided by another local exchange carrier, Ameritech,
were not treated by CenturyTel as long distance calls, even when
those calls were routed outside the Monroe exchange. After a hear-
ing before a hearing referee who allowed Phone Michigan to inter-
vene, the hearing officer proposed that the PSC decide that Bierman
was entitled to rely on CenturyTel's tariff and could not be charged
toll charges for the calls. The hearing officer found that Cen-
turyTel's tariff did not notify its customers that calls from the New-
port exchange to the Monroe exchange would be billed as long dis-
tance when Phone Michigan served the party being called or that
the charges would depend on the existence of an interconnection
agreement between CenturyTel and the phone company serving the
party being called. Finally, the hearing referee proposed that the
PSC decide that Phone Michigan had to have an interconnection
agreement with CenturyTel, as required under § 303 of the Michi-
gan Telecommunications Act (MTA), MCL 484.2303, rather than
merely relying on CenturyTel's tariff. The PSC decided that Cen-
turyTel violated its tariff in treating the disputed calls as long dis-

tance calls and that CenturyTel discriminated against Phone Michigan in requiring eleven-digit dialing to the number in question. The PSC ordered CenturyTel to pay a fine and the attorney fees and costs incurred by Bierman and Phone Michigan. CenturyTel appealed.

The Court of Appeals *held*:

1. The PSC's determination that calls to the number in question must be billed as local calls was neither unlawful nor unreasonable. The PSC correctly concluded that the fact that the calls were ultimately routed outside the local calling area did not mean that they could be billed as toll calls. The PSC properly relied on testimony indicating that a local call is considered completed when it reaches the particular switch for that local number, and that local calls to Monroe numbers served by Ameritech were billed as local calls regardless of whether they were routed outside Monroe. The PSC correctly rejected CenturyTel's argument that Phone Michigan's customers must be physically located in the Monroe exchange in order for calls to the number in question to be billed as local. Section 202(g) of the MTA, MCL 484.2202(g), directs the PSC to determine the methods needed to allow all local exchange customers to access an Internet service provider by making a local call, and § 356 of the MTA, MCL 484.2356, requires local exchange service providers to provide for virtual co-location with other providers to facilitate local-call access to the Internet. Furthermore, CenturyTel cannot unilaterally modify its billing scheme as stated in its tariff, which provides that calls from Newport to Monroe are calls in the local calling area.

2. The PSC's reversal of the hearing referee's determination that Phone Michigan had to have an interconnection agreement with CenturyTel before it activated service to the Internet service provider through the Monroe exchange number was neither unlawful nor unreasonable. Section 303(2) of the MTA, MCL 484.2303(2), provides that a telecommunication provider shall not provide basic local exchange service to customers or end-users located within another telecommunication provider's licensed area except through interconnection arrangements as provided by the MTA. Nothing in § 303 or the rest of the MTA indicates that a local exchange service provider may ignore its tariff when billing its own customer's calls based on another provider's violation of § 303.

3. The PSC's determination that CenturyTel had discriminated in violation of the MTA was lawful and reasonable. CenturyTel had adequate administrative remedies to ensure Phone Michigan's compliance with the MTA, yet chose to bill its innocent customer long dis-

tance for local calls to the Phone Michigan number and to require eleven-digit dialing. The fine imposed on CenturyTel is authorized under § 601 of the MTA, MCL 484.2601, and, in light of the anticompetitive nature of CenturyTel's actions and the fact that they were directed against an innocent customer, the fine is not excessive or unwarranted.

4. The award of attorney fees must be reversed. The PSC erred in awarding attorney fees against CenturyTel. Subsection 601 of the MTA, MCL 484.2601, does not authorize an award of attorney fees among remedies and penalties to protect and make whole ratepayers and other persons who have suffered an economic loss as a result of a violation of the MTA. Subsection 209(1) of the MTA, MCL 484.2209(1), authorizes the PSC to award a prevailing party's costs, including attorney fees, if the opposing party's position was frivolous; the PSC did not find that CenturyTel's position was frivolous.

Affirmed in part and reversed in part.

TELECOMMUNICATIONS — LOCAL EXCHANGE SERVICE PROVIDERS — CALLS WITHIN LOCAL CALLING AREAS — COMPETING LOCAL EXCHANGE CARRIERS — TARIFFS — MICHIGAN TELECOMMUNICATIONS ACT.

A local exchange service provider violates its tariff and discriminates against a competing local exchange carrier in violation of the Michigan Telecommunications Act where it assesses a long distance charge and requires eleven-digit dialing to reach a number that is within its local calling area, but that is maintained by a competing local exchange carrier that lacks an interconnection agreement with it (MCL 484.305).

*Loomis, Ewert, Parsley, Davis & Gotting, P.C.* (by *William D. Parsley, Harvey J. Messing,* and *Gary L. Field*), for CentruyTel of Michigan, Inc.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges* and *Steven D. Hughey,* Assistant Attorneys General, for the Public Service Commission.

*Clark Hill P.L.C.* (by *William R. Ralls* and *Leland R. Rosier*), for BRE Communications, LLC.

Amicus Curiae:

*Dickinson Wright PLLC* (by *John M. Dempsey, Jeffery V. Stuckey*, and *Michael P. Calabrese*) and *Michael A. Holmes*, for Ameritech Michigan.

Before: HOLBROOK, JR., P.J., and MCDONALD and SAAD, JJ.

MCDONALD, J. CenturyTel of Michigan, Inc., appeals as of right from an April 12, 1999, opinion and order of the Public Service Commission, which concluded that CenturyTel violated its tariff by assessing charges for local calls and illegally discriminated by requiring eleven-digit dialing to a local number serviced by BRE Communications, LLC, doing business as Phone Michigan (hereinafter Phone Michigan). The commission ordered CenturyTel to drop the toll charges to the complainant, Glenda Bierman, to cease rating those calls as toll calls, to pay a fine of $26,000 for violating the Michigan Telecommunications Act (MTA) MCL 484.2101 *et seq.*, and to pay the reasonable attorney fees and costs incurred by Bierman and Phone Michigan. We affirm in all substantive respects, but reverse the award of attorney fees.

Glenda Bierman lives in Newport, Michigan, where basic local exchange telephone service is provided by CenturyTel. CenturyTel's tariff with the Public Service Commission, filed in March of 1993, lists the local exchange coverage for the various areas where CenturyTel provides telephone service. This tariff states that the local calling area includes both the Newport exchange and the Monroe exchange, an area served by Ameritech. In July of 1998 Bierman purchased Internet service from MSEN, an Internet Service Pro-

vider (ISP). MSEN provided Bierman with an access telephone number that was assigned to the Monroe exchange and so should have been a local call from Bierman's residence. MSEN advised Bierman that the access number was a local call from her home. Unknown to Bierman, that number was provided to MSEN by a competitive local exchange carrier (CLEC), Phone Michigan, rather than by Ameritech. Phone Michigan obtained the 349 NXX,[1] which was designated to serve the Monroe exchange. However, calls to the 349 NXX number assigned to MSEN were routed to MSEN's equipment in Flint rather than a Monroe location, in a manner similar to call forwarding. In July and August of 1998 Bierman used the 349 NXX number assigned to MSEN to gain access to MSEN's Internet service and spent approximately 14,300 minutes on line. CenturyTel did not treat these calls as local calls to the Monroe exchange, but instead billed them as toll calls to Flint, which resulted in Bierman receiving additional and unexpected toll charges of approximately $2,500.

Bierman filed a complaint against CenturyTel with the Public Service Commission, alleging that CenturyTel had violated the MTA. Bierman accused CenturyTel of violating its tariff by billing her for toll charges for the calls to the MSEN access number and argued that CenturyTel's actions were misleading under § 502 of the MTA, MCL 484.2502. Bierman's complaint also alleged that CenturyTel had wrongfully discriminated against competitive local exchange carri-

---

[1] An NXX refers to the first three digits in a block of seven digit telephone numbers. An NXX consists of an assigned block of numbers beginning with those first three digits.

ers under § 305 of the MTA, MCL 484.2305, by treating other calls to the Monroe exchange as local. Public Service Commission staff participated in the case and supported Bierman's complaint. Phone Michigan was allowed to intervene in the case.

Witnesses on behalf of the commission staff and Phone Michigan testified that, under its tariff, CenturyTel must treat calls from Newport to a Monroe exchange NXX as local calls regardless of who provided the local telephone service for that NXX or where the call was ultimately routed. CenturyTel's tariff did not exclude calls to ISPs, nor was there any requirement that a party must be physically present in the local exchange area to have local call status in the Newport/Monroe extended area of service (EAS). Calls made by CenturyTel customers in Newport calling an Ameritech-provided NXX in the Monroe exchange were treated as local calls. However, calls made from Newport to an NXX assigned to a CLEC like Phone Michigan were billed as toll calls and required to use eleven-digit dialing (1 + area code + number) rather than seven-digit dialing. Requiring eleven-digit dialing to NXXs assigned to CLECs was an inferior connection prohibited by § 305, as well as by the Federal Telecommunications Act, 47 USC 251(b)(3). The Public Service Commission had previously ruled that calls routed to ISPs via seven-digit dialing must be treated as local calls. Commission staff argued that CenturyTel could not circumvent the commission's ruling by imposing eleven-digit dialing.

According to witnesses presented by the commission and Phone Michigan, a call to the 349 NXX is considered complete when it reaches that Monroe

number, and so should be treated as a local call under CenturyTel's tariff. The manner in which calls are ultimately routed does not affect the manner in which they are rated to the caller. Newport calls to Monroe NXXs served by Ameritech are treated as local calls regardless of whether those calls are ultimately routed outside the Monroe exchange. The routing, rating, and billing instructions on CenturyTel's local exchange switches are specified on the basis of the NXX of the number called, not on where the customer or its receiving equipment is located. CenturyTel specifically set its switching system so that every call to the 349 NXX is rated and billed as a long-distance call despite the fact that it is in the Monroe exchange. In contrast, calls to Ameritech-provided NXXs in the Monroe exchange are rated as local calls regardless of where those calls are ultimately routed or forwarded.

CenturyTel argued that Phone Michigan's 349 NXX was not legitimate and could not be treated as part of the Newport/Monroe local calling area. CenturyTel's witness testified that because Phone Michigan does not have an EAS agreement with CenturyTel, it must route calls to the 349 NXX over the Ameritech toll network to Flint. According to CenturyTel, the fact that the 349 NXX is not physically located in the Monroe exchange requires it to treat those calls as toll calls. It also argued that Phone Michigan did not file the required maps and tariffs with the Public Service Commission and so had no authority to provide basic local exchange service in the Monroe exchange. It is not disputed that Phone Michigan did not have a

tariff on file to provide basic telephone service in the Monroe exchange.

Because of the absence of an EAS or interconnection agreement with Phone Michigan, CenturyTel requires that its customers use eleven-digit dialing when calling the 349 NXX in the Monroe exchange. CenturyTel and Phone Michigan attempted to negotiate an EAS agreement, but never came to an agreement. According to CenturyTel's witness, Phone Michigan was unwilling to meet two of CenturyTel's main conditions for an EAS agreement: (1) a proper interconnection agreement regarding the routing of and payment for forwarded calls and (2) the requirement that Phone Michigan's customers must be physically located in the Monroe exchange. Phone Michigan or CenturyTel could petition the Public Service Commission for mediation or arbitration to resolve their dispute over the lack of an EAS, but did not do so. CenturyTel's witness admitted that while the Newport/Monroe local calling area was originally established under an EAS agreement with Ameritech, Ameritech had terminated that EAS contract. However, CenturyTel continues to operate as if the EAS agreement with Ameritech was still in place. Under CenturyTel's tariff, calls to the Monroe exchange are billed as local. Toll access revenue for calls from the Newport exchange that do not terminate in the Monroe exchange is shared between Ameritech and CenturyTel pursuant to a "feature group A revenue sharing agreement."

After an evidentiary hearing, the hearing officer issued a proposal for decision that found that Bierman was entitled to rely on CenturyTel's tariff and

could not be charged toll charges for calls to the 349 NXX. The hearing officer found that CenturyTel's tariff did not notify its customers that calls from the Newport exchange to the Monroe exchange would be billed as long distance when Phone Michigan served the party being called or that the charges would depend on the existence of an interconnection agreement between CenturyTel and the telephone company serving the party being called. The hearing officer agreed with the Public Service Commission staff that the routing of a call is separate from the rating of a call, pointing out that calls to numbers served by Ameritech were billed as local calls even if those calls were routed outside the Monroe exchange. Because the calls originate in Newport and terminate in Monroe for NXX purposes, the hearing officer concluded that the calls to the 349 NXX must be billed as local calls under CenturyTel's tariff. The hearing officer ordered that Bierman's telephone bill be adjusted to rate the 349 NXX calls as local. The hearing officer also agreed with CenturyTel in part, by finding that § 303 of the MTA, MCL 484.2303, required an interconnection agreement between CenturyTel and Phone Michigan. The proposal for decision found that Phone Michigan must have an interconnection agreement with CenturyTel and cannot simply rely on CenturyTel's tariff as an alternative to such an arrangement.

CenturyTel filed an exception to the hearing officer's finding that the 349 NXX calls should be billed as local. Phone Michigan and commission staff filed exceptions to the hearing officer's findings that Phone Michigan needed an interconnection agree-

ment with CenturyTel and that CenturyTel did not discriminate against Phone Michigan.

In its opinion and order the Public Service Commission rejected CenturyTel's arguments that it properly treated calls to the 349 NXX as toll calls, finding that "none of these arguments can overcome the effect of the plain language of the tariff which governs CenturyTel's relationship with its customers. Consequently, disputed calls were local calls and must be billed as such." For similar reasons the commission reversed the hearing officer's finding that the MTA required an interconnection agreement between CenturyTel and Phone Michigan, explaining:

> It may be true, as CenturyTel asserts, that there are many issues that must be addressed to arrive at a proper interconnection arrangement and that the tariff primarily addresses the issue of pricing, but it cannot be disputed that the technical arrangements needed to complete the calls are functional because Ms. Bierman's calls were completed. If CenturyTel is dissatisfied with the arrangement under the tariffs, there are lawful remedies available through negotiation, arbitration, or the filing of an application or complaint. *Failing to comply with its basic local exchange tariff, which requires that it provide* EAS *to the* Monroe exchange for its customers, is not a lawful response to its dispute with Phone Michigan. [Emphasis added].

The commission concluded that CenturyTel discriminated by requiring eleven-digit dialing to the 349 NXX, noting that CenturyTel's actions appeared motivated by a desire to place a competitor at a disadvantage rather than any legitimate reason based on technology. The commission found that Phone Michigan's failure to file tariff sheets defining the boundaries of

its Monroe Exchange did not prevent the commission from concluding that CenturyTel had discriminated, explaining that Phone Michigan's failure to file tariff sheets was not a criminal violation, did not cause CenturyTel's discrimination, was not as serious as CenturyTel's discrimination, and "does not remove Phone Michigan or CenturyTel's own customers from the protections of the MTA against discriminatory and anticompetitive conduct."

The Public Service Commission concluded that it was appropriate to fine CenturyTel for its violations of billing toll charges for local calls to the 349 NXX and requiring eleven-digit dialing for those same calls. The commission found that CenturyTel's actions warranted a fine of $500 a day for each violation, because the conduct was continuous, contrary to the competitive purposes of the MTA, and aimed at Bierman, a party with whom CenturyTel had no dispute. This resulted in a fine of $26,000 against CenturyTel. The commission also ordered CenturyTel to pay the reasonable attorney fees and costs of Bierman and Phone Michigan.

CenturyTel appeals the Public Service Commission's opinion and order as of right, raising the four issues below.

The standard of review for Public Service Commission decisions is provided by MCL 462.26(8), which states:

> In all appeals under this section the burden of proof shall be upon the appellant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable.

To prove that the commission's order was unlawful the appellant must show "that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment." *In re MCI Telecommunications Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). Our Supreme Court has explained that "[t]he hurdle of unreasonableness is equally high. Within the confines of its jurisdiction, there is a broad range or 'zone' of reasonableness within which the Public Service Commission may operate." *Id.* A commission decision is unreasonable when it is unsupported by the evidence. *In re MCI Telecommunications Corp Complaint*, 240 Mich App 292, 303; 612 NW2d 826 (2000).

The commission's findings of fact made after an evidentiary hearing must be supported by competent, material, and substantial evidence on the whole record. *Id.* Issues of statutory interpretation are reviewed de novo as issues of law. *In re MCI*, 460 Mich 413. However, this Court accords substantial deference to the commission's interpretation of its own orders and ordinarily will uphold those interpretations as long as they are supported by the record or otherwise reasonable. *In re MCI*, 240 Mich App 303.

I

CenturyTel argues that its tariff does not require it to treat calls to the MSEN number as local because those calls are routed to Flint rather than a location within the Newport/Monroe local calling area. We find that the Public Service Commission's determination that calls to the 349 NXX from Newport must be

billed as local calls was neither unlawful nor unreasonable.

The rates that a public utility may charge for its regulated services are established through tariffs filed with and approved by the Public Service Commission. The statutes and tariffs should be interpreted to further the Public Service Commission's ability to establish and maintain uniform and nondiscriminatory rates. *Midland Cogeneration Venture Ltd Partnership v Public Service Comm,* 199 Mich App 286, 309-310; 501 NW2d 573 (1993).

Section 102 of the MTA, MCL 484.2102, defines "exchange" and "local calling area" as follows:

> (h) "Exchange" means 1 or more contiguous central offices and all associated facilities within a geographical area in which local exchange telecommunication services are offered by a provider.
>
> \*     \*     \*
>
> (o) "Local calling area" means a geographic area encompassing 1 or more local communities *as described in maps, tariffs, or rate schedules* filed with and approved by the commission. [Emphasis added].

CenturyTel argues that because the calls to the 349 NXX number were routed outside the Newport/Monroe geographic area, they were not within the Monroe exchange or its local calling area.

Review of the record supports the Public Service Commission's conclusion that the fact that the call was ultimately routed or forwarded outside the local calling area did not mean that it could be billed as a toll call. The 349 NXX was assigned to the Monroe exchange by the North American Number Plan. The

evidence before the commission showed that the exchange of a number or NXX did not depend on the geographic location where a call was ultimately received. The commission relied on testimony indicating that a local call is considered completed when it reaches the particular switch for that local number, and that local calls to Monroe numbers served by Ameritech were billed as local calls regardless of whether those calls were routed outside the Monroe geographic area. This testimony was competent, material, and substantial evidence on the whole record and supported the Public Service Commission's findings.

Our review of the MTA supports the Public Service Commission's interpretation and ruling. Among the purposes of the MTA expressed in § 101 are (1) "[a]llow[ing] and encourag[ing] competition to determine the availability, prices, terms, and other conditions of . . . services," (2) "[r]estructur[ing] regulation to focus on price and quality of service and not on the provider," and (3) "[e]ncourag[ing] the introduction of new services, the entry of new providers, the development of new technologies . . . ." MCL 484.2101(2)(b), (c), (d). Subsection 202(g) of the MTA, MCL 484.2202(g), directs the Public Service Commission to determine the methods "needed to allow all local exchange customers to access an internet provider by making a local call." Section 356, MCL 484.2356, requires local exchange service providers like CenturyTel to provide for virtual co-location with other providers, apparently to facilitate local-call access to the Internet. The legislative intent expressed by these various sections supports the

commission's rejection of CenturyTel's argument that Phone Michigan's customer must be physically located in the Monroe exchange in order for calls to the 349 NXX to be billed as local.

CenturyTel's relationship to its customers was defined by its tariff. According to CenturyTel's tariff, the local calling area for the Newport exchange includes both the Newport and Monroe exchanges. CenturyTel cannot unilaterally modify its billing scheme as stated in its tariff. Because the 349 NXX was within the Monroe exchange, Bierman's calls to MSEN must be billed as local calls under CenturyTel's tariff. CenturyTel has attempted to recast a billing complaint filed against it by one of its own customers, Bierman, into a case over Phone Michigan's tactics and noncompliance with the MTA. Nothing in the record provided indicates that Ms. Bierman was affiliated with Phone Michigan or responsible for its compliance with the MTA. Ms. Bierman simply made calls to another part of CenturyTel's local calling area in the good-faith belief that these were local calls. She should not be made to pay for the fact that CenturyTel and Phone Michigan have not bothered to resolve their disputes.

II

CenturyTel argues that the hearing officer correctly determined that Phone Michigan was obligated to make technical arrangements with it through an interconnection agreement before it could activate service to MSEN through a number assigned to the Monroe exchange. We find that the Public Service Commission's reversal of the hearing officer's determination

was neither unlawful nor unreasonable. Phone Michigan's failure to enter into an interconnection agreement with CenturyTel did not permit CenturyTel to violate its own tariff and charge its own customer toll charges for calls to the 349 NXX.

Section 303(2) of the MTA, MCL 484.2303(2), provides:

> A telecommunication provider shall not provide basic local exchange service to customers or end-users located within another telecommunication provider's licensed service area except through interconnection arrangements as provided by this act.

Nothing in § 303 or the rest of the MTA indicates that a local exchange service provider may ignore its tariff when billing its own customer's calls based on another provider's violations of § 303. If CenturyTel is dissatisfied with Phone Michigan's tactics or refusal to enter into an interconnection agreement, its remedy is to either file a complaint under § 203 of the MTA, MCL 484.2203, or apply to the Public Service Commission for resolution of the matter under § 204 of the MTA, MCL 484.2204. If Phone Michigan is violating the MTA, CenturyTel should pursue action against Phone Michigan rather than punishing its own customers through hidden and discriminatory pricing.

III

CenturyTel argues that the Public Service Commission erred in finding that CenturyTel had discriminated, and that the commission's decision to fine CenturyTel was unlawful and unreasonable. CenturyTel claims that it acted in good-faith reliance on a reason-

able interpretation of its tariff and did not improperly discriminate against calls to Phone Michigan numbers in violation of the MTA. We find that the commission's determination that CenturyTel had discriminated in violation of the MTA was lawful and reasonable. The fine imposed by the commission was likewise lawful and reasonable.

Section 305, MCL 484.2305, provides in relevant part:

> (1) A provider of basic local exchange service shall not do any of the following:
>
> (a) Discriminate against another provider by refusing or delaying access service to the local exchange.
>
> (b) Refuse or delay interconnections or provide inferior connections to another provider.

Section 601 of the MTA, MCL 484.2601, provides for fines of up to $500 a day or $1,000 a day, depending on the number of the provider's access lines.

Review of the evidentiary record supports the commission's conclusion that CenturyTel acted out of a desire to punish a competitor or place it at a disadvantage rather than out of any concern for Phone Michigan's failure to comply with the MTA. The evidence presented to the commission showed that CenturyTel billed calls to Ameritech customers located in the Monroe exchange as local calls regardless of whether those calls were routed outside the Monroe exchange. Those calls to Ameritech customers were also completed without the caller having to use the area code. In contrast, calls to Phone Michigan's customer could be reached only by using the area code and were billed as toll calls. Although CenturyTel

blamed the toll charges and eleven-digit dialing on Phone Michigan's failure to reach any agreement regarding interconnection and billing, CenturyTel never pursued appropriate administrative remedies. Instead it merely set its switch to the 349 NXX to rate those calls as toll calls to Flint and required eleven-digit dialing for those calls.

The Public Service Commission did not inappropriately fine CenturyTel for good-faith misinterpretation of its tariff. As explained above, CenturyTel had adequate administrative remedies to ensure Phone Michigan's compliance with the MTA, but did not pursue them. Instead it merely billed one of its own customers toll charges for calls made to the 349 NXX, without any notice to that customer and in violation of its tariff. In light of the anticompetitive nature of CenturyTel's actions and the fact that they were directed against an innocent customer, the fine of $500 a day does not appear excessive or unwarranted.

IV

Finally, CenturyTel argues that the Public Service Commission erred in awarding appellees attorney fees. We agree that the commission lacked authority to award fees in this case. While § 601 of the MTA, MCL 484.2601, gives the commission power to "order remedies and penalties to protect and make whole ratepayers and other persons who have suffered an economic loss as a result of the violation," this Court has held that the statute does not authorize an award of attorney fees to the prevailing party. *In re Complaint of Southfield against Ameritech of Michigan,* 235 Mich App 523, 534; 599 NW2d 760 (1999). While

subsection 209(1) of the MTA, MCL 484.2209(1), authorizes the commission to award to the prevailing party its costs, "including reasonable attorney fees," if the opposing party's position was frivolous, the commission's opinion and order in this case contained no finding that CenturyTel's position was frivolous.

The decision of the Public Service Commission with respect to attorney fees is reversed; in all other respects, the order of the commission is affirmed. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.